United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 18, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-10486
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ANTHONY FIELDS,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:04-CR-166-ALL

Before DeMOSS, BENAVIDES, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

A jury found Defendant-Appellant Anthony Fields guilty of drug related charges and of being a felon in possession of a firearm. At trial, Fields moved to suppress evidence found in his vehicle, which the police searched on three separate occasions around the time of his arrest. The district court denied Fields' motion to suppress the evidence, reasoning that the challenged search of Fields' vehicle was a valid search incident to an arrest. We conclude that the warrantless search of Fields' vehicle was valid under the automobile exception to the warrant requirement, and AFFIRM the district court's denial

-1-

of Fields' motion to suppress.

## I. Facts

Michael Neff, a narcotics officer, received information from a confidential source that an individual named "T-Bone" was selling illegal narcotics out of a duplex in Ft. Worth. After further investigation, Neff determined that T-Bone was Anthony Fields, who owned a black Impala. On August 24, 2004, Neff went to an address in Arlington, Texas, which he believed to be Fields' residence. Neff watched Fields leave the residence and drive away in his Impala. He tried to follow Fields, but he was unsuccessful. Another narcotics officer, Kevin Turner, located Fields and followed him to a duplex. This was the same duplex described by the confidential source.

Narcotics officers maintained visual surveillance of the duplex and Impala, which was parked in the driveway of the duplex. During 45 minutes to one hour of surveillance of Fields, narcotics officer Jerry Brown saw eight to ten cars arrive at the duplex at different times. The car's occupants would talk to Fields briefly. After that, Fields would go into the duplex and return to the occupants of the cars. Fields would shake their hands and then the occupants of the cars would leave. Brown concluded that Fields was engaging in narcotics transactions.

After the last car left, Brown observed Fields make three trips to the Impala. On the first trip, Fields carried a black bag. On the second trip, Fields had an electronic device. On

the third trip, Fields put a small cooler in the Impala.  Fields then drove away in the Impala.

Neff and Brown decided they should pull Fields over.  Brown radioed Chuck Wiesman, an officer who was in a marked police car.  Brown instructed Wiesman to follow Fields and to pull him over if he committed a traffic violation.  Weisman saw Fields run a stop sign, so he turned on his overhead lights to pull Fields over.  Instead of stopping, Fields accelerated.   Fields began driving at high speed, drove across two vacant lots, lost control of his car, and ran the Impala into the side of the same duplex that he had just left.

Fields exited the Impala through the driver's side window and ran on foot.  Wiesman pursued Fields initially, but stopped after Fields jumped over a fence.  Wiesman then went back to the Impala and opened the passenger door to see if anyone else was in the car ("first search").  No one was inside, so Wiesman shut the door.  A few minutes after the first search, Wiesman heard over the radio that Fields had been taken into custody.  He went back to the Impala and again opened the passenger door ("second search").  Wiesman saw a black bag in the passenger door pocket. The bag was open and contained narcotics.

Meanwhile, Officer Brown chased and arrested Fields.  The Government contends that Fields was arrested one and a half blocks away from the Impala.  Fields contends he was arrested three to four blocks from the Impala.  Officers handcuffed

Fields, placed him in the back of a patrol car, and returned him to the Impala. Fields remained in the squad car about 30 feet away from the Impala while crime scene officers photographed and searched the car ("third search"). In addition to the black bag with narcotics, the crime scene officers found narcotics in the cooler and a handgun in the front passenger seat.

Officer Neff obtained a search warrant to search the duplex. It did not appear that anyone lived there. The duplex contained minimal furniture. One bedroom was filled with yard equipment and trash. The bathroom had no toiletries or towels. There were a few articles of clothing in the duplex. The windows were covered with foil or black plastic. There were twenty-two boxes of sandwich bags inside the duplex.

## II. Procedural History

Fields was charged in a three count indictment with three drug related charges. On December 15, 2004, a superceding indictment added a fourth count, charging Fields with being a felon in possession of a firearm, and on December 20, 2004, the Government filed a sentencing enhancement information.

The case proceeded to trial. At a bench conference after jury selection and prior to presenting the indictment to the jury, Fields made an oral motion to suppress evidence because he contended that the second search of the Impala, conducted without a warrant, violated the Fourth Amendment. After a presentation of the case law outside the presence of the jury, the district

court denied the motion to suppress, stating:

> The opening of the door was a perfectly legitimate thing to do to see if there was anybody else in the vehicle, to see if there was anything that could pose an immediate threat to the safety of the officers. Even the search of the vehicle after they brought the man back was consistent with the Thornton case because of his proximity to the vehicle that was being searched. Plus, once the drugs fell out of the vehicle, there was a basis, a constitutional basis, for searching the vehicle at that time because it was apparent that contraband was in the vehicle.

A jury found Fields guilty on all four counts alleged in the superceding indictment. Fields was sentenced to a total aggregate sentence of 300 months imprisonment, a ten year term of supervised release, and a $100.00 mandatory special assessment. Fields timely filed his notice of appeal on April 7, 2005.

### III. Discussion

Fields argues that the second search of his vehicle by officer Wiesman was an unreasonable warrantless search in violation of the Fourth Amendment. He contends that, as a result, the evidence seized from his vehicle should be suppressed. "This court reviews the district court's fact-findings on a motion to suppress for clear error and reviews de novo the 'ultimate determination of Fourth Amendment reasonableness.'" *United States v. Sinisterra*, 77 F.3d 101, 104 (5th Cir. 1996) (citing *United States v. Seals*, 987 F.2d 1102, 1006 (5th Cir. 1993)).

The district court concluded that the warrantless search of

Fields' vehicle did not violate the Fourth Amendment because it was a valid search incident to an arrest. The search incident to an arrest exception to the warrant requirement "allows police to search the passenger compartment of a vehicle incident to a lawful custodial arrest of both 'occupants' and 'recent occupants'" of the vehicle. *Thornton v. United States*, 541 U.S. 615, 622 (2004)(citing *New York v. Belton*, 453 U.S. 454, 460 (1981)). An arrestee's status as a recent occupant turns on "his temporal or spatial relationship to the car at the time of the arrest and search." *Id.* However, the *Thornton* Court "never specified the physical distance between the defendant and his car at the time he was arrested"[1] that would constitute a "recent occupant."[2] At first blush it seems that Fields did not have a close spatial relationship to his vehicle at the time of the arrest and search because he was anywhere from one and a half to four blocks away from his vehicle when he was arrested and during the contemporaneous search. *See United States v. Pittman*, 411 F.3d 813, 815-17 (7th Cir. 2005)(questioning whether an arrest a half a block away from the vehicle searched is too great a

---

[1] *United States v. Jones*, 155 F. App'x 204, 207 (6th Cir. 2005) (holding that an arrest ten to fifteen feet from the car is a close spatial relationship).

[2] The *Thornton* Court declined to address whether a "recent occupant" of a vehicle needed to be within reaching distance of the car to constitute a close spatial relationship. *Thornton*, 541 U.S. at 622 n.2.

-6-

distance to constitute a search incident to an arrest under *Thornton*, but upholding the validity of the search under the automobile exception).[3]  However, we need not decide this issue because the search was valid under the automobile exception to the warrant requirement.[4]

The automobile exception allows police to search a vehicle if they have probable cause to believe that the vehicle contains contraband.  *Maryland v. Dyson*, 527 U.S. 465, 467 (1999).  There

_____

[3] *Pittman* also raises doubts as to the Seventh Circuit's holding in *United States v. Arango*, 879 F.2d 1501 (7th Cir. 1989).  In that case, the court upheld the validity of a search of the defendant's vehicle when he was a mile away at the time of the arrest.  Notably, *Arango* precedes *Thornton*.

[4] Fields contends that the government cannot raise the automobile exception for the first time on appeal.  The government did not raise the automobile exception in the district court because that court found that the search in question was a valid search incident to an arrest.  The issue underlying both the automobile exception and the search incident to an arrest exception to the warrant requirement is the ultimate reasonableness of a warrantless search.  *See Carroll v. United States*, 267 U.S. 132, 153 (1925) (explaining that the Fourth Amendment guarantees freedom from *unreasonable* searches and seizures); *see also United States v. Ross*, 456 U.S. 798, 809 (1982) ("[An automobile] search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained."); *United States v. Robinson*, 414 U.S. 218, 235 (1973)(stating that a search incident to an arrest is a reasonable intrusion under the Fourth Amendment).  At trial, the Government opposed Fields' motion to suppress and argued that the search of Fields' vehicle was reasonable.  We review a search for Fourth Amendment reasonableness, and that issue has been preserved for appeal. *Sinisterra*, 77 F.3d at 104.  The Government was not required to "raise innumerable issues despite an apparent lack of necessity to do so."  *United States v. Cardona*, 955 F.2d 976, 982 (5th Cir. 1992).

was probable cause to believe that Fields' vehicle contained contraband at the time of the search at issue. Probable cause is determined by examining the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). A narcotics officer received information from a confidential source that Fields was selling illegal narcotics.[5] Officers observed Fields in his black Impala and followed Fields when he drove to a duplex. The officers maintained visual surveillance of Fields for nearly an hour. During the surveillance, the officers observed activity that they, through their training and experience, associated with drug transactions. Following the observed transactions, officers watched Fields place a black bag, an electronic device and a cooler inside his Impala. The officers watched Fields get into his car and drive away. When the police followed Fields, he evaded them. Instead of pulling over when Officer Wiesman turned on his lights, Fields accelerated, drove at a very high speed, lost control of his car and crashed the Impala into the side of the duplex. After the crash, Fields climbed out the driver's side window of the car and ran on foot and was eventually arrested. All of these events occurred before Officer Wiesman conducted the second search of Fields' vehicle. The events prior to the search, taken together,

---

[5] The confidential source informed the narcotics officer that someone named "T-Bone" was selling illegal narcotics. The investigating officers knew Fields as T-Bone.

amount to probable cause. *See, e.g.*, *id.* at 241 ("Our decisions applying the totality-of-the-circumstances analysis outlined above have consistently recognized the value of corroboration of details of an informant's tip by independent police work."); *United States v. Vega*, 221 F.3d 789, 799 n.26 (5th Cir. 2000) ("[Unprovoked flight] is among the relevant contextual considerations in the probable cause analysis."); *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Headlong flight-wherever it occurs-is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.").

First, Fields argues that the automobile exception cannot apply because it requires that the vehicle searched be "readily mobile," and that due to the crash, Fields' Impala was not readily mobile when the officer searched it. However, Fields mischaracterizes the automobile exception. Even where an automobile is not immediately mobile at the time of the search, "the lesser expectation of privacy resulting from *its use as a readily mobile vehicle* justifie[s] application of the vehicular exception." *California v. Carney*, 471 U.S. 386, 391 (1985)(emphasis added). Fields used his Impala as a readily mobile vehicle throughout the police chase and in all the events leading up to his arrest and the search in question.

Furthermore, the fact that Fields crashed his car after a

police chase does not increase his privacy interest in his vehicle. "An essential element to a successful challenge of a search or seizure on Fourth Amendment grounds is the existence of a legitimate expectation of privacy." *United States v. Salvucci*, 448 U.S. 83, 92-93 (1980). "[R]educed expectations of privacy [in a vehicle] derive . . . from the pervasive regulation of vehicles capable of traveling on the public highways." *Carney*, 471 U.S. at 392.[6] Fields disregarded these "pervasive regulations": the Impala was involved in a high speed police chase immediately prior to the search; Fields ran a stop sign, drove erratically, and crashed into the side wall of a building. If the car was not mobile at the time of the search,[7] it was solely by virtue of Fields complete disregard of driving regulations, and this does not entitle him to a heightened privacy interest.

Second, Fields contends that the automobile exception does not apply because his vehicle was located on private property, the duplex, at the time of the search. *California v. Carney*

---

[6] In *California v. Carney*, the Supreme Court explained that "although ready mobility alone was perhaps the original justification for the vehicle exception, [its] later cases have made clear that ready mobility is not the only basis for the exception . . . the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *Carney*, 471 U.S. at 391 (internal quotations omitted).

[7] There is no evidence in the record to indicate whether the Impala was drivable after the crash.

clarifies that the automobile exception applies when the vehicle searched is "found stationary in a place not regularly used for residential purposes." 471 U.S. 386, 392 (1985). Thus, we have concluded that automobile exception may not apply when a vehicle is parked at the residence of the criminal defendant challenging the constitutionality of the search. *See United States v. Sinisterra*, 77 F.3d 101, 104-05 (5th Cir. 1996) ("Here, the mall parking lot was not related to anyone's residence."); *see also United States v. Williams*, 124 F. App'x 885, 887 (5th Cir. 2005) ("[S]ome support exists for the proposition that the automobile exception does not apply when a vehicle is parked in the defendant's private driveway . . . .").

As an initial matter, the automobile exception applies because Fields did not regularly use the duplex for residential purposes. While there is some indication in the record that Fields had an ownership interest in the duplex, a search of the duplex revealed that Fields did not use the duplex as a residence; he used it to sell his drugs. Furthermore, Fields' vehicle was not parked in the driveway. Rather, Fields had crashed the car into the side of the building. The Fourth Amendment concerns that arise when the police search a car that is parked in the driveway of a home, without a warrant, are not present here. *See Coolidge v. New Hampshire*, 403 U.S. 443, 461- 62 (1971); *see also United States v. Orona*, 166 F. App'x 765, 766

(5th Cir. 2006) ("[E]xigent circumstances are [] required to justify a warrantless search of a vehicle when the vehicle is parked in the driveway of a residence.").

The search of Fields' vehicle was valid under the automobile exception to the warrant requirement, and we AFFIRM the district court's denial of Fields' motion to suppress.