# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-1533

_____

United States of America

*Plaintiff - Appellee*

v.

Shaun Short

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: January 12, 2021
Filed: June 29, 2021

_____

Before LOKEN, GRASZ, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

Shaun Short conditionally pleaded guilty to possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). He appeals the district court's[1] denial of his motion to suppress evidence found in a warrantless

---

[1]The Honorable Rebecca Goodgame-Ebinger, United States District Judge for the Southern District of Iowa.

search of his vehicle and a subsequent warrant search of his apartment. See Fed. R. Crim. P. 11(a)(2). Regarding the vehicle search, the issue is whether the automobile exception to the Fourth Amendment's warrant requirement applies to a vehicle with a flat tire. On that issue, we review the district court's findings of fact for clear error and its legal conclusions *de novo.* United States v. Williams, 777 F.3d 1013, 1015 (8th Cir. 2015). Regarding the apartment search, the issue is whether Short made the threshold showing needed to require a hearing under Franks v. Delaware, 438 U.S. 154 (1978), to determine the sufficiency of the warrant affidavit's showing of probable cause. We review the denial of a Franks hearing for abuse of discretion. United States v. Kattaria, 553 F.3d 1171, 1177 (8th Cir.) (en banc), cert. denied, 558 U.S. 1061 (2009). Short also argues the district court imposed a substantively unreasonable 72-month prison sentence, an issue we review for abuse of discretion. United States v. Borromeo, 657 F.3d 754, 756 (8th Cir. 2011). We affirm.

## I. The Vehicle Search

We recite the background facts relevant to the vehicle search as found by the district court in its Order denying the motion to suppress:

> Des Moines police officers responded to a report of gunshots fired at a Des Moines apartment complex on April 16, 2019. The various 911 callers reported that three potential suspects were involved. Callers also reported two black cars were involved, including a car of the same make and model as Short's car: a black Dodge Charger. One caller reported observing someone running from the apartment complex and firing a gun. The caller described this individual as a black male with dreadlocks wearing a white shirt and dark blue pants. Another caller identified a black male dressed in black clothing running down the hill at the back of the apartment complex.
>
> Officer [Cordel] Miller arrived at the apartment complex and encountered Short walking in the parking lot. Short was near a parked

car, later determined to be his. Officer Miller recognized Short as matching the description reported by one of the 911 callers as a black male with dreadlocks wearing a white shirt and blue pants.

Officer Miller approached Short. He asked him a series of questions regarding the shots fired, whether Short had any weapons on his person, Short's identity, and who was involved in the shooting. . . .

After placing Short in handcuffs, Officer Miller surveyed the exterior of Short's black Dodge Charger. Officer Miller detected a strong odor of marijuana emanating from the rear driver's side window, which was open an inch or two. Officer Miller called Narcotics Investigator Andrew Becker to the scene. Becker also smelled marijuana coming from the car. Becker and another narcotics investigator then searched the car. They found a small bag containing approximately two grams of marijuana and an identification card for Short indicating he lived in the apartment complex.

Elsewhere at the apartment complex, Emmanuel Toe and Samuel Atoyebi were identified as the other individuals reportedly involved in the shooting. Both admitted to their involvement in the shooting. They were detained. Atoyebi told officers his black Nissan was hit by gunfire. Atoyebi also stated he drove Toe to the apartment complex to purchase marijuana from Short.

Detective Becker applied for and obtained a search warrant for Short's apartment. In Short's bedroom, officers found approximately 70 grams of marijuana; baggies with marijuana residue; $12,000 in cash; and working digital scales, one of which field tested positive for cocaine. Officers also located two firearms in Short's mother's room.

In denying Short's motion to suppress evidence found during the warrantless search of his vehicle, the district court concluded that the smell of marijuana gave the officers probable cause to search the vehicle and that the automobile exception permitted them to search the vehicle without a warrant. "Under the automobile exception to the Fourth Amendment, an officer may search a vehicle without a

warrant if he has probable cause." United States v. Pacheco, 996 F.3d 508, 513 (8th Cir. 2021).

On appeal, Short does not contest the court's conclusion that the smell of marijuana gave the officers probable cause to search his vehicle. Rather, Short argues that the Supreme Court's original reasoning in establishing the automobile exception does not apply in this case because his car was parked in the apartment complex lot with a flat tire. It is true the Supreme Court has repeatedly stated that no *separate* exigency is required for a vehicle search because "if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." Maryland v. Dyson, 527 U.S. 465, 467 (1999) (alterations in original); see Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) ("the automobile's 'ready mobility' [is] an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear") (citation omitted). But the Court has never held that only a "readily mobile" automobile may be searched without a warrant. Indeed, in Michigan v. Thomas, 458 U.S. 259, 261 (1982), the Court stated:

> the justification to conduct . . . a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant.

Short cites no case holding that the automobile exception does not apply when the vehicle to be searched is temporarily immobilized, and we have found none. Published opinions by two of our sister circuits, supported by an unpublished opinion of this court, have held to the contrary. In United States v. Mercado, 307 F.3d 1226, 1229 (10th Cir. 2002), the Tenth Circuit upheld the warrantless search of a van that had been towed to a public garage for minor repairs. The Court relied in part on our

unpublished decision in <u>United States v. Maggard</u>, No. 00-1146, 2000 WL 680394 (8th Cir.), <u>cert. denied</u>, 531 U.S. 916 (2000), where we upheld the warrantless search of a truck stuck in a ditch, explaining that the truck had not lost its "inherent mobility" because it could become mobile by simply towing it out of the ditch. Here, there is no evidence that the flat tire rendered Short's vehicle more than temporarily immobile. Nor is there evidence the flat tire rendered the vehicle even temporarily immobile, as numerous witnesses reported it had been driving around the parking lot that afternoon.

In <u>United States v. Fields</u>, 456 F.3d 519 (5th Cir.), <u>cert. denied</u> 549 U.S. 1046 (2006), the Fifth Circuit upheld the warrantless search of a vehicle that crashed into the side of a duplex while being pursued by police with probable cause to believe it contained contraband:

> Fields mischaracterizes the automobile exception. Even where a automobile is not immediately mobile at the time of the search, 'the lesser expectation of privacy resulting from *its use as a readily mobile vehicle* justifies[s] application of the vehicular exception.'

<u>Id.</u> at 524 (emphasis and alterations in original), quoting <u>California v. Carney</u>, 471 U.S. 386, 391 (1985). Here, as the apartment complex parking lot was "available for the use of residents and their guests, the landlord and his agents, and others having legitimate reasons to be on the premises, . . . [Short] did not have an expectation of privacy" in the lot. <u>United States v. McGrane</u>, 746 F.2d 632, 634 (8th Cir. 1984).

The officers indisputably had probable cause to search Short's vehicle, and an easily repairable flat tire did not cause the vehicle to lose its inherent mobility. Accordingly, the automobile exception applied and the district court properly denied the motion to suppress evidence resulting from the vehicle search.

## II. The <u>Franks</u> Hearing Issue

Short argues the district court erred in refusing to hold a <u>Franks</u> hearing based on Short's allegations that Detective Becker omitted key information from his application for a warrant to search the apartment that Short and his mother shared in the complex. To merit a <u>Franks</u> hearing, Short must make a substantial preliminary showing that Becker, the warrant affiant, included in the affidavit "a false statement knowingly and intentionally, or with reckless disregard for the truth . . . [that] is necessary to the finding of probable cause." <u>Kattaria</u>, 553 F.3d at 1176, quoting <u>Franks</u>, 438 U.S. at 155-56. "The requirement of a substantial preliminary showing is not lightly met." <u>United States v. Arnold</u>, 725 F.3d 896, 898 (8th Cir. 2013) (quotation omitted).

Short's argument is based in part on the contention that the search of his car was unlawful and therefore that part of Becker's probable cause showing must be excised in determining whether the affidavit established probable cause. Like the district court, we have rejected that contention. The bulk of the argument focuses on Becker's alleged omission of facts necessary to put the probable cause showing in proper perspective -- the affidavit recited that Atoyebi and Toe admitted being involved in the shooting and that Atoyebi told Detective Dawson that the two went to the apartment complex to buy marijuana from Short, but it omitted facts demonstrating that Atoyebi was not credible -- his conflicting statements to other officers, initially giving a false name and claiming to be a witness rather than a participant in the shooting; Toe's conflicting statement they came to the apartment to fight; and evidence from witnesses that Toe was the shooter and only Atoyebi placed a firearm in Short's hands. Short argues that "showing that he was the victim of this shooting, and that Atoyebi was not credible, should have been sufficient to have a hearing pursuant to <u>Franks</u>."

The district court found that "Short's assertions fail to show Investigator Becker deliberately or recklessly omitted" from his affidavit "various details, including that Toe and Atoeybi were the other suspects reported in the 911 calls and that their accounts varied as to why they came to the apartment complex." And even if Short had made a sufficient showing of deliberate or reckless omissions, the court found that, "if the affidavit included the omitted information, the references to the reports and response to 911 shots-fired calls, the recovery of marijuana from Short's car, and Short's criminal history" are "sufficient, considering the totality of the circumstances, to support a finding of probable cause to search Short's apartment." We agree.

Absent from Short's allegations is a scintilla of evidence that Detective Becker knowingly disregarded the truth in his warrant affidavit in order to mislead the issuing judge. "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." United States v. Mathison, 157 F.3d 541, 548 (8th Cir. 1998), cert. denied, 525 U.S. 1089 (1999). Short argues the alleged omissions create an inference of reckless disregard of the truth. However, "[i]n a warrant affidavit, the government need only show facts sufficient to support a finding of probable cause." United States v. Ozar, 50 F.3d 1440, 1445 (8th Cir.), cert. denied, 516 U.S. 871 (1995). Therefore, "reckless disregard for the truth may be inferred from the omission of information from an affidavit only when the material omitted would have been clearly critical to the finding of probable cause." United States v. Carnahan, 684 F.3d 732, 735 (8th Cir.) (quotation omitted), cert. denied, 568 U.S. 1016 (2012). Here, no clearly critical facts were omitted. The recovery of marijuana in Short's vehicle, the 911 calls including one caller who reported that a man fitting Short's description ran from the complex firing a weapon, and Short's criminal history established probable cause to search the apartment, even if Atoybei's statements to the police officers were less than completely credible. The district court did not abuse its discretion in denying a Franks hearing.

### III. The Sentencing Issue

The district court determined that Short's advisory guidelines sentence range was 60 months imprisonment, the mandatory minimum sentence. See 18 U.S.C. § 924(c)(1)(A)(i). The PSR identified Short's extensive criminal history as a potential ground for upward departure, see USSG § 2K2.4, comment. (n.2(B)), and a number of 18 U.S.C. § 3553(a) sentencing factors that may warrant an upward variance. The government requested an upward variance to 90 months. The district court sentenced Short to 72 months imprisonment. The court explained that the 12 month variance reflected the serious nature of the underlying events, including that it was "a shooting related to drug trafficking" that "occurred in an open and public area," that Short's several prior convictions evidenced a "consistent engagement in drug trafficking," and that combining drugs and guns "create[s] a greater risk."

On appeal, Short argues that his 72 month sentence is substantively unreasonable because the district court did not give adequate weight to mitigating factors --his troubled upbringing and disabilities -- while giving too much weight to the seriousness of the underlying shooting and his criminal history. At sentencing, the district court expressly considered the parties' sentencing positions and arguments and explained the reasons for the sentence it imposed. The court acknowledged Short's "significant documentation of challenges that he's faced and he continues to face in terms of intellectual functioning and other background issues," his "letters of support," and a medical report the court found "thorough" and considered. The court weighed those factors against the offense conduct's "significant danger to the public both in its basic form, possessing a firearm in furtherance of a drug trafficking crime, and in the actual facts of this case."

"We review this issue under the abuse-of-discretion standard, taking into account the totality of the circumstances." Borromeo, 657 F.3d at 756 (citation omitted). After careful review of the totality of the circumstances reflected in the

sentencing record, we conclude this is not "the unusual case when we reverse a district court sentence -- whether within, above, or below the applicable Guidelines range -- as substantively unreasonable." Id. The district court did not abuse its substantial sentencing discretion in weighing the 18 U.S.C. § 3553(a) factors.

The judgment of the district court is affirmed.

_____