COURT OF APPEALS OF VIRGINIA

Present:    Judges Fulton, Causey and Raphael
Argued by videoconference


COMMONWEALTH OF VIRGINIA

                                                    MEMORANDUM OPINION* BY
v.      Record No. 1443-23-3                        JUDGE JUNIUS P. FULTON, III
                                                    JANUARY 23, 2024

LEIGH ANN JENNINGS


                FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                            J. Frederick Watson, Judge

            Sandra M. Workman, Assistant Attorney General (Jason S. Miyares,
            Attorney General, on brief), for appellant.

            No brief or argument for appellee.[1]


        On May 8, 2023, Leigh Ann Jennings was indicted in the Circuit Court of Campbell County

on one count of possession of a Schedule I/II controlled substance, in violation of Code § 18.2-250.

Jennings was also charged with one count of driving under the influence of alcohol in violation of

Code § 18.2-266.  Jennings filed a motion to suppress certain evidence, and on August 10, 2023, the

trial court held a hearing on that motion and ultimately granted Jennings's motion.  The

Commonwealth filed this pre-trial appeal.  For the following reasons, we reverse and remand.

---

        * This opinion is not designated for publication.  See Code § 17.1-413(A).

        [1] Appellee submitted a timely brief in opposition to the Commonwealth's petition for
appeal.  However, after the petition for appeal was granted, appellee failed to timely file a brief
in opposition to the Commonwealth's appeal.  Therefore, only the Commonwealth presented
argument on appeal.

BACKGROUND[2]

At about 11:20 a.m. on December 7, 2022, Dyron Martin, an emergency medical technician for Campbell County Public Safety, went to the scene of a reported car crash on Route 501. Martin found Leigh Ann Jennings in one of the vehicles involved in the incident. After ensuring that the vehicle was turned off, Martin noticed that Jennings was disheveled, dazed, and confused. Martin explained to Jennings that she had struck another car, crossed the median, and hit three more cars. Jennings stated that she could not remember what happened. Due to Jennings's appearance and condition, Martin asked if she was under the influence of anything. She replied that she and her boyfriend had "smoked some weed last night."

Martin helped Jennings out of her car and into an ambulance that had arrived on the scene. Martin asked Jennings if she had her identification. She said it was in a pink bag in her car. Martin went to the vehicle and found a pink box. Martin opened the box and saw "what appeared to be a sizeable bag of marijuana," two pipes, a jewelry screwdriver, a set of scales, and a "light bulb shaped container" with a "sugary looking crystallized product."

Virginia State Police Trooper Sica arrived on the scene at 11:34 a.m. When Trooper Sica tried to talk to Jennings in the ambulance, she appeared very confused and had "pinpoint pupils." Jennings said she left her boyfriend's house on Sage Drive but remembered nothing after that. Jennings said she wanted to get in her vehicle and drive home. Trooper Sica testified that Jennings's car was "not drivable at all." The ambulance left to transport Jennings to the hospital. Martin told Trooper Sica about the contents of the box, with what appeared to be marijuana and

---

[2] "In an appeal by the Commonwealth of an order of the trial court suppressing evidence, the evidence must be viewed in the light most favorable to the defendant and findings of fact are entitled to a presumption of correctness unless they are plainly wrong or without evidence to support them." *Commonwealth v. Peterson*, 15 Va. App. 486, 487 (1992).

drug paraphernalia. Trooper Sica walked to the vehicle with Martin, and at Trooper Sica's request, Martin took the pink box out of the car and gave it to Trooper Sica.

Trooper Sica testified that the applicable police procedure under the circumstances was to conduct an inventory search of Jennings's car and subsequently to have the car towed. Specifically, Trooper Sica testified that the procedure when a non-drivable vehicle remains at the scene of an accident was to call a tow truck and "then usually conduct the inventory search of the vehicle. That way we know what is and isn't in the vehicle while it's taken to the tow lot since it's not going directly back to the driver." Trooper Sica stated that he performed what he believed to be an inventory search of the vehicle. However, Trooper Sica admitted that the impetus for his "search" was to retrieve what he believed to be drugs and accompanying paraphernalia. Further, he admitted that he did not complete any sort of "inventory list" from the search. Ultimately, the substances found in the pink box were determined to be contraband.

In support of her motion to suppress the evidence seized from the pink box, Jennings argued that the police violated her Fourth Amendment rights when they searched her car without a warrant. The Commonwealth conceded that Trooper Sica asking Martin to retrieve the box constituted a police search of the vehicle. However, the Commonwealth asserted that Trooper Sica had probable cause to believe drugs were in the car based on Jennings's impaired condition and Martin's discovery of apparent drugs and paraphernalia. The Commonwealth contended that under the automobile exception, the police were authorized to search the vehicle without a warrant, so long as they had probable cause to do so. Alternatively, the Commonwealth contended that the evidence was admissible under the doctrine of inevitable discovery, as Trooper Sica testified that it was standard police procedure to conduct inventory searches of such automobiles involved in car crashes before having them towed.

The trial court questioned whether the automobile exception applied because Jennings's vehicle was completely "totaled," and ultimately had been rendered entirely "immobile" by the events of the car crash. Further, the trial court was skeptical of any purported "inventory search," given that Trooper Sica expressly testified that his intent in carrying out the search was to retrieve the drugs and paraphernalia contained in the pink box.

Ultimately, the trial court found that Martin was acting as a community caretaker when he initially entered Jennings's car and discovered the box. Further, the trial court concluded that once Martin told Trooper Sica about the contents of the box, Trooper Sica possessed probable cause to believe that Jennings's car contained contraband. The court then opined that "the issue turn[ed] on the question of the mobility of the car, could the car actually be driven." The court concluded that because Jennings's car could not be driven, it "was not mobile" and the automobile exception therefore did not apply. The court also rejected the Commonwealth's argument concerning inevitable discovery because Trooper Sica did not follow standardized procedures in conducting an inventory search. For these reasons, the trial court granted the motion to suppress.

ANALYSIS

On appeal, the Commonwealth argues that the trial court erred (1) in holding that the automobile exception to the warrant requirement did not apply to the set of facts in this case and (2) in holding that the doctrine of inevitable discovery did not ratify the warrantless search. We agree with the Commonwealth that the automobile exception applies, and we therefore reverse and remand for further proceedings.[3]

_____

[3] Because we agree with the Commonwealth's first assignment of error, we do not reach the second and third assignments of error, as judicial restraint obligates us to reach decisions on the best and narrowest grounds available. *See Commonwealth v. White*, 293 Va. 411, 419 (2017).

- 4 -

In "an appeal by the Commonwealth of an order of the trial court suppressing evidence, the evidence must be viewed in the light most favorable to the defendant and findings of fact are entitled to a presumption of correctness unless they are plainly wrong or without evidence to support them." *Commonwealth v. Peterson*, 15 Va. App. 486, 487 (1992). However, this Court "review[s] *de novo* the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case." *Cherry v. Commonwealth*, 44 Va. App. 347, 356 (2004). "It is the appellant's burden to show that when viewing the evidence in such a manner, the trial court committed reversible error." *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017)).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." *California v. Carney*, 471 U.S. 386, 390 (1985). "Fourth Amendment jurisprudence recognizes three categories of police-citizen [contacts]: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions based upon specific, articulable facts, commonly referred to as *Terry* stops, and (3) highly intrusive arrests and searches founded on probable cause." *Blevins v. Commonwealth*, 40 Va. App. 412, 420-21 (2003) (alteration in original) (quoting *Wechsler v. Commonwealth*, 20 Va. App. 162, 169 (1995)).

"Under the Fourth Amendment, officers cannot search a place without a warrant unless one of several delineated exceptions to this warrant requirement apply." *Duncan v. Commonwealth*, 55 Va. App. 175, 179 (2009) (citing *Flippo v. West Virginia*, 528 U.S. 11, 14 (1999)). "A warrantless search by the police is invalid unless it falls within one of the narrow and well-delineated exceptions to the warrant requirement." *Flippo*, 528 U.S. at 13 (citing *Katz*

*v. United States*, 389 U.S. 347, 357 (1967)). "The Fourth Amendment prohibits only 'unreasonable searches and seizures,' not reasonable ones." *King v. Commonwealth*, 49 Va. App. 717, 723 (2007) (internal citation omitted). "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . [and] requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Saal v. Commonwealth*, 72 Va. App. 413, 426 (2020) (second and third alterations in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Further, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* (quoting *Bell*, 441 U.S. at 559).

"Under long-standing Fourth Amendment jurisprudence, a police officer may, before making an arrest and without obtaining a search warrant, search a vehicle . . . so long as the officer has probable cause to do so." *Curley v. Commonwealth*, 295 Va. 616, 621 (2018). "[P]robable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Jones v. Commonwealth*, 277 Va. 171, 178 (2009) (alteration in original) (quoting *United States v. Grubbs*, 547 U.S. 90, 95 (2006)). The automobile exception to the Fourth Amendment's warrant requirement is predicated upon the fact that the officer believes the car contains evidence of a crime. *Duncan*, 55 Va. App. at 179 (citing *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999)). In evaluating "whether a police officer had probable cause to conduct a warrantless search of a vehicle, as occurred here, we examine the events leading up to the [search], and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Curley*, 295 Va. at 622 (alteration in original) (quotation omitted).

Here, the Commonwealth argues that the automobile exception applies to the facts of this case. The Supreme Court in *Carroll v. United States*, 267 U.S. 132, 147 (1925), recognized "a distinction between the necessity for a search warrant in the searching of private dwellings and in that of automobiles." The Court in *Carroll* "held that the ready mobility of the automobile justifies a lesser degree of protection of those interests." *Carney*, 471 U.S. at 390. "The Court rested this exception on a long-recognized distinction between stationary structures and vehicles." *Id.* Specifically, the Court in *Carroll* stated:

> [T]he guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon, or automobile, for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

*Carroll*, 267 U.S. at 153.

This so-called "automobile exception" has been developed by the United States Supreme Court over the past century. *See, e.g.*, *Cooper v. California*, 386 U.S. 58 (1967); *Chambers v. Maroney*, 399 U.S. 42, 52 (1970); *Cady v. Dombrowski*, 413 U.S. 433, 442 (1973); *Cardwell v. Lewis*, 417 U.S. 583, 588 (1974); *Texas v. White*, 423 U.S. 67 (1975); *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976); *Michigan v. Thomas*, 458 U.S. 259 (1982); *United States v. Ross*, 456 U.S. 798 (1982). In articulating the contours of the exception, many of these cases relied (at least in part) on the "ready mobility" of the vehicle—or, in other words, the "exigency" of the situation[4] that would preclude obtaining a warrant—as a justification for the search.

---

[4] The Court in *Carroll* stated that the automobile exception rested, at least in part, on the fact that "it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." 267 U.S. at 153.

The Supreme Court of Virginia stated, in 1984, "[u]nder the well-established automobile exception to the warrant requirement, an automobile may be searched without a warrant where there are *both* probable cause to believe the car contains evidence of crime and exigent circumstances." *McCary v. Commonwealth*, 228 Va. 219, 227 (1984) (emphasis added). However, the Court in *McCary* also acknowledged in a footnote that "[a]n argument is sometimes made that the United States Supreme Court no longer requires exigent circumstances to justify a warrantless automobile search but instead requires only a showing of probable cause." 228 Va. at 227 n.*. The next year, the United States Supreme Court published two decisions that clarified that exigency was not required in order for the Commonwealth to rely on the automobile exception. In *Carney*, the Court stated:

> [A]lthough ready mobility alone was perhaps the original justification for the vehicle exception, our later cases have made clear that ready mobility is not the only basis for the exception. The reasons for the vehicle exception, we have said, are twofold. "Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office."

471 U.S. at 391 (quoting *Opperman*, 428 U.S. at 367). In *United States v. Johns*, 469 U.S. 478 (1985), the Court stated:

> "[T]he justification to conduct such a warrantless search does not vanish once the car has been immobilized." *A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search.*

*Id.* at 484 (alteration in original) (emphasis added) (quoting *Thomas*, 458 U.S. at 261). The rationale for this conclusion is stated succinctly in *Carney*:

> The public is fully aware that it is accorded less privacy in its automobiles because of this compelling governmental need for regulation. Historically, "individuals always [have] been on notice that movable vessels may be stopped and searched on facts giving rise to probable cause that the vehicle contains contraband, without

> the protection afforded by a magistrate's prior evaluation of those facts." In short, the pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy, and the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met.

471 U.S. at 392 (alteration in original) (quoting *Ross*, 456 U.S. at 806 n.8).

This conclusion was reaffirmed by the United States Supreme Court in *Dyson*,[5] where the Court stated, "[a]s we recognized nearly 75 years ago . . ., there is an exception to th[e warrant] requirement for searches of vehicles. And under our established precedent, the 'automobile exception' has no separate exigency requirement." 527 U.S. at 466.[6] Several of the federal

---

[5] The dissent cites *Collins v. Virginia*, 584 U.S. 586 (2018), to negate the line of cases cited herein ending with *Dyson*. Upon review, that case is factually distinguishable from the case before us. In *Collins*, the United States Supreme Court had to analyze whether an officer who trespassed upon the curtilage of the defendant's home could do so, without a warrant, in order to search a motorcycle. The Court acknowledged that probable cause existed to search the vehicle itself. Nevertheless, the Court held the search unreasonable. The Court recognized that the facts of that case arose "at the intersection of two components of the Court's Fourth Amendment jurisprudence: the automobile exception to the warrant requirement and the protection extended to the curtilage of a home." *Id.* at 591. In holding that the automobile exception did not excuse the officer's warrantless search, the Court relied on the heightened privacy interests at stake when an officer trespasses on the curtilage of one's home. *See id.* at 595 ("Nothing in our case law, however, suggests that the automobile exception gives an officer the right to enter a home or its curtilage to access a vehicle without a warrant."). Put simply, the heightened privacy interests involved with an individual's home or dwelling "trump" the justifications undergirding the automobile exception, at least where no other exception to the warrant requirement would justify the intrusion of the home or dwelling itself. *Id.* at 596 (refusing to extend the automobile exception to the search because "searching a vehicle parked in the curtilage involves not only the invasion of the Fourth Amendment interest in the vehicle but also an invasion of the sanctity of the curtilage" itself). Though we agree with this general proposition, these are not the facts here, as Jennings's vehicle was not located within the curtilage of her home. Further, while the specific language cited by the dissent, at first blush, might seem to support the proposition that the "ready mobility" of the automobile affects the applicability of the automobile exception, upon further review it is clear that the Court was simply restating the justifications that undergird the automobile exception. The Court was not clarifying, changing, overturning, or in any way modifying the prior precedents it laid down in the line of cases we cite *supra*. Because the Court *directly addressed* this issue in *Dyson*, *Carney*, and *Johns*, we see no reason to deviate from that precedent when it is so directly on point.

[6] We note that the United States Supreme Court has also abandoned any sort of practicality analysis; in other words, it is no longer necessary to find that it would be "impracticable" to obtain a warrant. The only question is whether probable cause exists that a

circuits as well as our sister states have applied the rule in the same way. *See, e.g.*, *Farris v. State*, No. 12-22-00235-CR, 2023 Tex. App. LEXIS 7055, at *9-11 (Tex. App. Sep. 6, 2023) (holding that automobile exception applied despite that the car had two flat tires and had been involved in an accident); *Vassar v. State*, 99 P.3d 987 (Wyo. 2004) (rejecting defendant's argument that "because he was hospitalized and his vehicle was damaged and allegedly immobile, the exigencies underlying the automobile exception did not exist"); *People v. Carter*, 655 N.W.2d 236 (Mich. Ct. App. 2002) (holding that automobile exception did not rise or fall depending on the peculiarities of the automobile to be searched; the exception was established because of the mobility of cars in general); *State v. Akers*, 723 S.W.2d 9 (Mo. Ct. App. 1986) (same); *United States v. Fields*, 456 F.3d 519, 524 (5th Cir. 2006) ("[T]he fact that Fields crashed his car after a police chase does not increase his privacy interest in his vehicle. . . . If the car was not mobile at the time of the search, it was solely by virtue of Fields complete disregard of driving regulations, and this does not entitle him to a heightened privacy interest."); *United States v. Kelly*, 592 F.3d 586, 591 (4th Cir. 2010) ("These cases also reflect the well-recognized need to provide 'clear and unequivocal guidelines to the law enforcement profession' in the context of automobile searches. As this very case illustrates, whether the police exercise control over an automobile sufficient to eliminate any exigencies may turn on a number of imponderable factors. Were the applicability of the automobile exception to turn on such factors, it would be hard for courts to administer the exception in a coherent and predictable manner. . . . For these reasons, we reject [appellant]'s attempt to create an exception to the automobile exception." (quoting *California v. Acevedo*, 500 U.S. 565, 577 (1991))). Simply stated, automobiles are different *in kind* than a person's home, and therefore the privacy interests involved are lessened.

---

vehicle contains evidence of a crime. *See Dyson*, 527 U.S. at 465 (holding that a "finding [of probable cause] alone satisfies the automobile exception to the Fourth Amendment's warrant requirement").

Further, it is clear that the automobile exception contains no exigency requirement, and given the lessened privacy interests involved, rises and falls solely on the presence or absence of probable cause.

Here, the trial court expressed concern as to whether Martin constituted a state actor or not. However, the trial court expressly found that even if he was a state actor, the initial search conducted by Martin was carried out under the community caretaker doctrine. Further, the trial court expressly found that based on Martin's initial search, Trooper Sica had probable cause to search the vehicle. Jennings does not contest either of those findings, and we see no error in those rulings. Still, the trial court suppressed the evidence obtained during the search because Jennings's automobile was not readily mobile, and Trooper Sica did not obtain a warrant. However, as we have noted above, no such exigency or ready mobility is required by the automobile exception. Because Trooper Sica had probable cause to suspect that Jennings's vehicle contained evidence of a crime, he was entitled to search the vehicle, and Jennings's Fourth Amendment rights were not violated.

CONCLUSION

The automobile exception requires only that a reasonable officer have probable cause to suspect that a vehicle contains evidence of a crime and does not rise or fall on the "ready mobility" of the vehicle. Because there was probable cause for Trooper Sica to search the vehicle, the trial court erred in granting Jennings's motion to suppress.

*Reversed and remanded.*

Causey, J., dissenting.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When a Fourth Amendment search is unreasonable, a warrant is required. The warrantless search of an immovable vehicle, even with probable cause, is a violation of the Fourth Amendment. Here, the trial court correctly held that because the vehicle was not mobile, the automobile exception did not apply. Therefore, because a warrant was required before Trooper Sica's search of Jennings's vehicle, I respectfully dissent.

"We view the evidence in a light most favorable to [the defendant], the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence." *Commonwealth v. Grimstead,* 12 Va. App. 1066, 1067 (1991). "We will not reverse the trial judge's decision unless it is plainly wrong."[7] *Id.* As the trial court correctly noted, the *Carroll* exception to the warrant requirement requires that probable cause exist to believe that the vehicle contains evidence of a crime, and it must be impractical for the officers to secure a warrant to search the vehicle in question. *Carroll v. United States*, 267 U.S. 132, 159-60 (1925).

The majority contends that United States Supreme Court precedent as it currently stands has abolished the requirement that a car be immobile for the automobile exception to the warrant requirement to apply. The majority concludes that "it is clear that the automobile exception contains no exigency requirement, and . . . rises and falls solely on the presence or absence of probable cause." However, this is untrue. The majority cites the saga of Supreme Court cases about the automobile exception for this conclusion, with the most recent case it cites being

---

[7] For its standard of review, the majority relies on a case where the procedural posture was a defendant's appeal of the denial of a suppression motion. *Cherry v. Commonwealth*, 44 Va. App. 347, 355 (2004). The case I rely on, *Commonwealth v. Grimstead*, 12 Va. App. 1066 (1991), has the same procedural posture as the case here—a Commonwealth appeal of the granting of a suppression motion.

*Maryland v. Dyson*, 527 U.S. 465 (1999). The majority asserts that *Dyson* "reaffirmed" the conclusion that "the 'automobile exception' has no separate exigency requirement."

Actually, the most recent United States Supreme Court case on this issue is a Virginia case, *Collins v. Virginia*, 584 U.S. 586 (2018), which makes the opposite conclusion.[8] The Court discussed the two justifications behind the automobile exception—"[t]he 'ready mobility' of vehicles," and "the pervasive regulation of vehicles capable of traveling on the public highways." *Id.* at 591 (quoting *California v. Carney*, 471 U.S. 386, 390, 392 (1985)). In its discussion of these two justifications, the Court states that "*[w]hen these justifications for the automobile exception 'come into play,'* officers may search an automobile without having obtained a warrant so long as they have probable cause to do so." *Id.* at 592 (emphasis added) (quoting *Carney*, 471 U.S. at 393). Thus, the government may only search a car without a warrant when the two justifications for the exception are present, provided that the search is supported by probable cause. "[T]he rationales underlying the automobile exception are specific to the nature of a vehicle." *Id.* at 596. "The rationales thus take account only of the balance between the intrusion on an individual's Fourth Amendment interest in his vehicle and the governmental interests in an expedient search of that vehicle." *Id.* No expediency existed nor was the vehicle capable of traveling on the public highways.

Here, the trial court's decision regarding the motion to suppress was not plainly wrong. Despite Jennings's constitutional protections and the vehicle being inoperable, Sica still performed a

---

[8] The facts of the 2018 *Collins* case and the two decades' worth of cases cited by the majority are factually different from Jennings. Nevertheless, the United States Supreme Court in *Collins* (the only Virginia case) directly addressed and analyzed the automobile exception. The *Collins* decision turned, in part, on application of the automobile exception. 584 U.S. at 601 ("[W]e conclude that *the automobile exception* does not permit an officer without a warrant to enter a home or its curtilage in order to search a vehicle therein." (emphasis added)). As the majority agrees, the Court clearly stated the automobile exception justifications for a warrantless search, which this dissent relies upon.

warrantless search of the vehicle. Sica testified that Jennings's car was "not drivable at all." Additionally, when Sica arrived on the scene Jennings was already in the ambulance being medically treated. Although the court found that Sica had probable cause, the car was not readily moveable. "The 'ready mobility' of vehicles served as the core justification for the automobile exception," and now still serves as one of the core justifications, accompanied by the additional justification that vehicles are "pervasive[ly] regulat[ed]." *Id.* at 591 (quoting *Carney*, 471 U.S. at 390, 392). Hence, it was not "impractical" for Sica to secure a warrant prior to searching the vehicle. Because the core "ready mobility" justification was not applicable here, the automobile exception to the warrant requirement did not apply. Thus, the trial court correctly applied the law as it currently stands and was not plainly wrong in concluding that because Jennings's car was immobile, the automobile exception did not apply.

Furthermore, Sica asked Martin to do what he could not. "[A]n officer must have a lawful right of access to a vehicle in order to search it pursuant to the automobile exception." *Id.* at 596. Martin testified that after he told Sica about the contents of the box, Sica directed Martin to take the pink box out of the car and give it to him. While the trial court may have found that Martin was acting as a community caretaker when he initially entered Jennings's car and discovered the box, he removed the box at the direction of law enforcement. One is left to wonder why Sica directed Martin to recover the pink box rather than recovering it himself.

"At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving the challenged action did not violate the defendant's constitutional rights." *Russell v. Commonwealth*, 33 Va. App. 604, 609 (2000). The Commonwealth fell short of its burden here. The trial court's decision was not plainly wrong; thus, we are bound by it on appeal. A warrant was required. Therefore, I would hold that the trial court's decision to grant Jennings's motion to suppress was not plainly wrong and would affirm the trial court's decision.

- 14 -