# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3387

_____

United States of America,         *
            *
    Plaintiff - Appellee,     *
            * Appeal from the United States
   v.               * District Court for the Southern
            * District of Iowa.
James Robert Keele,      *
            *
    Defendant - Appellant.   *

_____

Submitted: May 15, 2009
Filed: December 21, 2009

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

James Robert Keele was convicted by a jury of being a drug user in possession of a firearm in violation of 18 U.S.C. § 922(g)(3) and 924(a)(2) and was sentenced to three years probation. He appeals the district court's[1] denial of his motion to suppress evidence obtained during the search of his home. We affirm.

---

[1]The Honorable John A. Jarvey, United States District Court for the Southern District of Iowa.

## I.

On July 19, 2007, Keele was involved in a single car accident on Highway 61 between the cities of Muscatine and Davenport in Iowa when his car veered off the road and into a steep ditch. A witness to the accident, Tina Elliott, pulled over to help and called 911. After she stepped out of her car, Ms. Elliott observed Keele remove a black bag from his car and throw it over a nearby fence into a ditch in a field. A few minutes later, Keele walked up the embankment to the spot where Ms. Elliott and another woman were waiting. Keele appeared "very anxious and jittery." He told Ms. Elliott that he was fine and that she should leave, but she waited for officials to arrive.

Deputy Courtney Kelley of the Muscatine County Sheriff's Office was the first law enforcement officer to reach the scene. Deputy Kelley spoke with Keele and obtained his driver's license. She noticed that Keele appeared "jittery, [and] talked real fast." Deputy Kelley observed Keele's car and a black bag in the ditch. Keele explained that he was tired and just coming from the courthouse. Deputy Kelley also spoke with the witness, Ms. Elliott, who explained that she saw Keele take a black bag from his vehicle and throw it into the field. Ms. Elliott pointed out where Keele had thrown the bag, and Deputy Kelley could see it from where the two were standing. After another officer arrived at the scene, Deputy Kelley retrieved the black bag from the ditch and examined its contents. The bag contained a metal pipe used for smoking controlled substances; a bag containing a white powdery substance; spoons with burnt bottoms and a white substance on top; a digital scale with a white powdery substance on it; a clear plastic bag with corners cut; a piece of Brillo pad; two personal checks in Keele's name; a Mediacom bill in Keele's name; and a list of unidentified phone numbers. Deputy Kelley then contacted the Muscatine County Drug Task Force.

Special Agent Daniel Stepleton of the Iowa Division of Narcotics Enforcement arrived at the scene along with two other Task Force officers. At the time, Agent Stepleton had over eighteen years experience with the Iowa Division of Narcotics Enforcement, advanced training from the United States Drug Enforcement Agency,

and over 1500 hours of experience as drug enforcement instructor. He examined the contents of the black bag and concluded, based on his experience, that they were consistent with the manufacture and use of crack cocaine. Agent Stepleton then performed a field test on the white powdery substance recovered from the digital scale which indicated the presence of cocaine. Agent Stepleton concluded that the white substance in the plastic bag was probably baking soda because its texture was too fine to be cocaine. Agent Stepleton testified that in his experience, baking soda is used as part of the manufacturing process to convert cocaine from a salt form to a base form. Agent Stepleton also interviewed Keele, following Miranda warnings, and Keele admitted that the black bag was his and that he was aware it contained drug paraphernalia. When Agent Stepleton asked Keele whether he was aware of the plastic baggie containing a white powder substance, Keele stated that the baggie contained baking soda but that he was unsure who was the owner of the baggie. Keele stated that he lived alone at 714 North Calhoun Street in West Liberty, Iowa, which matched the address listed on his driver's license. Agent Stepleton requested permission to search Keele's residence, but Keele declined. Deputy Kelley then transported Keele to the local jail. Keele gave a urine sample which indicated that cocaine was present in his system.

Agent Stepleton left the scene and applied in the Muscatine County District Court for a warrant to search Keele's residence, car, and garage. In support of the warrant application, Agent Stepleton submitted a two-page affidavit describing the incident on Highway 61 and a separate three page document describing the grounds for his belief that evidence of illegal possession, use, dealing or distribution of controlled substances would be found at Keele's residence. Judge Patrick Madden of the Muscatine County District Court issued the search warrant for Keele's car, residence, and garage after striking one of the items from the list of "Property to Be Seized." During the execution of the search warrant at Keele's home, a rifle and additional drug paraphernalia were recovered.

-3-

## II.

Keele argues that the district court erred in denying his motion to suppress evidence obtained during the search of his home because the search warrant was not supported by probable cause and the district court erred by applying the <u>Leon</u> good-faith exception. <u>See</u> <u>United States v. Leon</u>, 468 U.S. 897 (1984). The district court concluded that issuance of the warrant was not supported by probable cause but admitted the evidence pursuant to <u>Leon</u>. "On appeal from the denial of a motion to suppress, we review a district court's findings of fact for clear error and its determination of probable cause and the application of the <u>Leon</u> exception de novo." <u>United States v. Perry</u>, 531 F.3d 662, 665 (8th Cir. 2008). Because this court may uphold the district court's denial of a motion to suppress on any grounds supported by the record, we first address the issue of probable cause. <u>See</u> <u>United States v. Pratt</u>, 355 F.3d 1119, 1121 (8th Cir. 2004).

"In ruling on a motion to suppress, probable cause is determined based on the information before the issuing judicial officer." <u>United States v. Smith</u>, 581 F.3d 692, 694 (8th Cir. 2009) (internal quotation marks and citation omitted). We look to the totality of the circumstances to determine whether an affidavit is sufficient to demonstrate probable cause. <u>See</u> <u>United States v. Hart</u>, 544 F.3d 911, 914 (8th Cir. 2008), <u>cert.</u> <u>denied</u>, 129 S.Ct. 2069 (2009). "Probable cause exists if the warrant application and affidavit describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular place, and our duty on appeal is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." <u>United States v. Montes-Medina</u>, 570 F.3d 1052, 1059 (8th Cir. 2009) (internal quotation marks omitted). Though the issue of probable cause is reviewed de novo, this court accords "great deference to the issuing judge's determination that [the] affidavit established probable cause." <u>Smith</u>, 581 F.3d at 694.

Here, the district court concluded that the warrant application did not give rise to probable cause because it failed to establish a sufficient "nexus between the auto

search and the residence search other than the defendant's ownership of the home."
The nexus required by the Fourth Amendment, however, is that "between the
contraband [being sought] and the place to be searched." See United States v. Tellez,
217 F.3d 547, 550 (8th Cir. 2000). In other words, evidence recovered from the
accident scene may aid in establishing this nexus; but it is the contraband being sought
in the warrant application, not that already recovered, that must be linked sufficiently
to the place to be searched. We conclude that Agent Stepleton's affidavit established
the required nexus between the evidence being sought in the warrant application and
Keele's residence.

Following Keele's accident, authorities recovered evidence that demonstrated
Keele may be involved in not only possession, but also the manufacture and
distribution, of controlled substances. After recounting this evidence, Agent
Stepleton's warrant affidavit explained that in his experience the items recovered from
the black bag were "consistent with the conversion of powder cocaine into cocaine
base - a process which constitutes manufacture of a controlled substance." The
affidavit also stated that, in Agent Stepleton's experience, "drug users, dealers and
manufacturers [sic] of illicit narcotics [] use digital scales to weigh illicit narcotics for
re-sale." It went on to explain that manufacturers and dealers "use baking soda to
[convert] cocaine hydrochloride into cocaine base (crack), and use the baking soda to
dilute illicit narcotics to increase the quantity of the drug for re-sale." Agent
Stepleton's affidavit then turned to his reasons for believing contraband could be
found in Keele's residence. It stated that "[T]hese same dealers and manufacturers
utilize their residence's [sic] to secret the illicit narcotics, cooking utensils and
packaging materials." It also stated that a trafficker in controlled substances often
maintains records of drug transactions and cash or other proceeds in their place of
residence.

"Judges may draw reasonable inferences from the totality of the circumstances
in determining whether probable cause exists to issue a search warrant. . . ." United

States v. Alexander, 574 F.3d 484, 490 (8th Cir. 2009) (quoting United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007)). Here, evidence of drug manufacturing and distribution was recovered from the accident scene. It was linked to Keele's residence through the experienced opinion of Agent Stepleton that drug manufacturers often keep contraband and proceeds at their personal residences. After according deference to the magistrate judge's determination, we determine that the magistrate had a "substantial basis for concluding that probable cause existed." Montes-Medina, 570 F.3d at 1059 (internal quotation marks and citation omitted).

"[E]ven if we agreed with [Keele] that there was insufficient evidence of a nexus between his home and the contraband, which we do not, we still would not find that the warrant application was so deficient that the [Leon] good-faith exception could not apply." Tellez, 217 F.3d at 550. Under Leon, the exclusionary rule is not to be "applied to exclude the use of evidence obtained by officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the issuance of a search warrant that is ultimately found to be invalid." United States v. Taylor, 119 F.3d 625, 629 (8th Cir.1997) (citing Leon, 468 U.S. at 905, 922). Nothing in our review of the record indicates that the warrant was facially invalid or that the issuing judge abandoned his role as a neutral and detached magistrate. See Tellez, 217 F.3d at 550. Nonetheless, Keele argues that the application of the Leon good-faith exception is inappropriate because Iowa courts do not recognize a similar exception as a matter of state constitutional law. This argument misses the mark. "While individual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution, state law [does] not alter the content of the Fourth Amendment." Virginia v. Moore, 128 S.Ct. 1598, 1604 (2008) (internal quotation marks and citation omitted). The district court did not err in denying Keele's motion to suppress.

### III.
For the foregoing reasons, the judgment of the district court is affirmed.

_____