# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-3075

_____

United States of America

*Plaintiff - Appellee*

v.

Isaac May

*Defendant - Appellant*

_____

No. 21-3344

_____

United States of America

*Plaintiff - Appellee*

v.

James Richards, also known as Richie Rich

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: October 19, 2022
Filed: June 14, 2023

_____

Before SMITH, Chief Judge, BENTON and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Isaac May and James Richards (collectively, "appellants") were convicted by a jury of charges alleged in a ten-count superseding indictment for offenses committed as part of a large drug conspiracy. The district court[1] sentenced them to 360 and 336 months in prison, respectively. On appeal, May challenges both the denial of his motion for severance and his sentence; Richards challenges the denial of his motion for recusal, the denial of his motions to suppress wiretap and video surveillance recordings, and his convictions. We affirm.

## I. *Background*

The indictment charged May with one count of conspiring to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846; and three counts of using a communications facility in furtherance of a drug trafficking offense, in violation of 21 U.S.C. §§ 843(b) and (d). Richards was charged with one count of conspiring to distribute five kilograms or more of cocaine; one count of distributing less than 500 grams of a mixture and substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and five counts of using a communications facility in furtherance of a drug trafficking offense.

## A. *Pretrial*

May moved for severance, arguing that there was a substantial risk that the jury would confuse which acts were allegedly committed by him and which by Richards. He averred that the risk of prejudice outweighed the preference for joinder. May

_____

[1]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

further argued that he would need to call Richards as a witness to show that any alleged wrongdoing was done without May's consent or knowledge. May suggested that Richards could exercise his Fifth Amendment right, depriving May of his constitutional right to examine him.

In denying the motion, the district court observed that "[g]enerally, persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together." R. Doc. 415, at 2 (quoting *United States v. Lewis*, 557 F.3d 601, 609 (8th Cir. 2009)). The district court further stated that May would be required to establish that Richards actually would testify and that Richards's testimony would be exculpatory. The district court concluded that May failed to establish prejudice.

Richards also filed pretrial motions. First, he moved for recusal because the district court authorized the warrants that led to his arrest. He argued that "[w]ith the information gained while signing the warrants, Judge James M. Moody became impartial and bias[ed] to Mr. Richards." R. Doc. 231, at 2.

The district court denied the recusal motion. It concluded that "[j]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." R. Doc. 247, at 2 (alteration in original) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). It further relied on *United States v. Jones*, 801 F.2d 304, 312 (8th Cir. 1986), to conclude that preindictment execution of a wiretap order or search warrant does not necessitate recusal by the issuing judge.

Richards moved to suppress the government's wiretap and video surveillance evidence. For both motions, Richards asserted that the wiretaps and video surveillance violated his right to privacy. He further asserted that the government failed to show that "the broad expectation of privacy in information gathered . . . outweighs Mr. Richards' privacy interest." R. Doc. 232, at 3; R. Doc. 233, at 3. In a

subsequent brief, Richards argued that he was not associated with the phone numbers subject to the wiretaps and that he was not on any of the calls.

The court held hearings on both motions. Richards challenged the wiretap recordings, arguing that he had no association with the target phone numbers or identified with any of the recorded calls. The government responded that Richards lacked standing to challenge the recordings. The district court denied the suppression motion finding no standing and, in the alternative, ruled that the wiretaps were supported by probable cause.

As to the video surveillance recordings, Richards made no substantive argument for suppression. He merely asked the district court to review the videos to help adjudicate his motion. The district court limited its inquiry to whether the videos were improperly obtained. It then denied the motion without further explanation.

## B. *Trial*

FBI Special Agent Joshua Hubbard and Cedric Bradley, a co-conspirator, testified at trial for the government. Agent Hubbard, as the case agent, investigated the appellants' drug conspiracy. Agent Hubbard testified about the wiretap recordings placed on John Garner's phones. Garner supplied May's and Richards's drugs. Agent Hubbard testified that the wiretap recordings included conversations between Richards and other members of the conspiracy, including Bradley. He also testified as to the procedures used to identify the people using the phones that were either targeted by the wiretap or in contact with the targeted phones. All of the recordings were admitted into evidence over May's objection. Richards, however, did not object to the admission of the wiretap recordings.

Agent Hubbard also testified as to the confidential source who purchased drugs from Richards. Agent Hubbard testified that Ray Boyd was sent to Richards's home to discuss drug trafficking. Agent Hubbard outfitted Boyd with a device that secretly

recorded audio and video of Boyd's conversation with Richards. Two days later, after four recorded calls with Richards, Boyd went back to Richards's home to purchase two ounces of cocaine. He purchased the cocaine from Richards and secretly recorded the transaction. Agent Hubbard's testimony included an in-court identification of Richards. Agent Hubbard authenticated the videos and recorded calls, which the district court admitted into evidence over May's objection. Richards, again, did not object.

Bradley testified that he had engaged in drug transactions with Richards. During his testimony, he corroborated some of the wiretap recordings produced from Richards's phone in which they discuss various transactions: (1) on May 9, 2018, Richards called Bradley offering to sell him ounce quantities of cocaine; (2) on May 10, 2018, Richards called Bradley offering to sell him two ounces of cocaine, to which Bradley agreed; and (3) on May 11, 2018, Richards called Bradley offering to sell two ounces of crack cocaine, and Bradley accepted. Bradley testified that between April and May 2018, he purchased crack and powder cocaine, in at least two-ounce quantities, from Richards on three or four different occasions.

At the beginning of Bradley's testimony, the government asked him to identify Richards in court. Bradley stated, "I still can't see him too good," which prompted the government to ask if he needed glasses. R. Doc. 530, at 159. Bradley stated that he did need glasses but that he did not have any with him. The government indicated that it would skip the in-court identification, to which Bradley responded, "All right. I don't think I see him." *Id.* Richards's lawyer raised no concerns about Bradley's failed identification.

The jury found May and Richards guilty on all counts.

C. *Sentencing*

At sentencing, neither May nor Richards objected to their respective presentence reports. The district court adopted both reports. Richards's total offense level was calculated by the court as 37, and his criminal history category was VI based on a criminal history score of 8 and a career offender enhancement. May also had a total offense level of 37 and a criminal history category of VI, based on his criminal history score of 20 and a career offender enhancement. Guidelines ranges for both May and Richards were 360 months to life in prison.

Richards was sentenced to 336 months and May to 360 months. The district court explained that it gave Richards a two-year downward variance based on Richards's work helping other inmates as a mentor and counselor in the Pulaski County Sheriff's Office's reentry program. The court further distinguished the two by noting that Richards appeared more remorseful than May.

However, the district court denied May's motion for a downward variance. The court placed greater weight on May's higher criminal history score and the seriousness of the offense than the mitigating factors he presented. It stated, "His criminal history consists of violent acts and possession of firearms. He committed the instant offense while on several state supervisions, which shows a wanton disregard for the law." R. Doc. 522, at 17.

II. *Discussion*

May challenges both the denial of his motion for severance and his sentence; Richards challenges the denial of his motion for recusal, the denial of his motions to suppress wiretap and video surveillance recordings, and his convictions.

A. *May*

May raises two arguments on appeal. First, he argues that the district court erred in denying his motion for severance. Second, he argues that the district court

procedurally erred in calculating his 360-month Guidelines range and that the resulting sentence is substantively unreasonable.

### 1. *Motion for Severance*

May argues that severance was required because the complexity of the case negatively affected the jury's ability to compartmentalize the evidence. Moreover, the jury's request for a transcript of testimony increased the likelihood of confusion. He further argues that "there was no specific guidance or admonishment to the jury" that would prevent them from convicting him based on evidence that actually applied to Richards's misconduct. May's Br. at 15.

"We review a district court's denial of a motion to sever for an abuse of discretion." *United States v. Weckman*, 982 F.3d 1167, 1172 (8th Cir. 2020) (quoting *United States v. Nichols*, 416 F.3d 811, 816 (8th Cir. 2005)). "To warrant severance, a defendant must show real prejudice; that is, something more than the mere fact that he would have had a better chance for acquittal had he been tried separately." *Id.* (cleaned up).

A defendant seeking severance can demonstrate prejudice to his right to a fair trial by showing that "his defense is irreconcilable with that of his co-defendant," or that "the jury will be unable to compartmentalize the evidence as it relates to the separate defendants." *United States v. Mickelson*, 378 F.3d 810, 818 (8th Cir. 2004). "In our consideration of the jury's ability to compartmentalize the evidence against the joint defendants, we consider 1) the complexity of the case; 2) if one or more of the defendants were acquitted; and 3) the adequacy of admonitions and instructions by the trial judge." *United States v. Pherigo*, 327 F.3d 690, 693 (8th Cir. 2003).

Here, the superseding indictment charged the appellants with a total of ten counts; May was charged with four. The trial lasted three days, and the jury found both May and Richards guilty of all charges. Contrary to May's contention, this case

was not unusually complex. The government's theory—that May and Richards were involved in a conspiracy to sell cocaine—connected the appellants on all counts. In addition, their defense—that the government failed to produce credible evidence linking them to the conspiracy—was simple and straightforward. We have determined cases involving comparable numbers of charges and defendants were not complex. *See United States v. Jones*, 880 F.2d 55, 63 (8th Cir. 1989) (holding five-defendant, seven-day drug conspiracy trial "not particularly lengthy or complex"); *United States v. Gutberlet*, 939 F.2d 643, 646 (8th Cir. 1991) (holding four-day drug conspiracy trial involving two defendants, seven counts, and no complex issues not complex).

The level of involvement by each defendant is also not overly disparate. "[D]isparity among the defendants in extent of involvement and culpability is commonplace in conspiracy cases and does not alone show the kind of prejudice that would require a district court to sever, rather than to respond with some less drastic measure such as a curative instruction." *United States v. Spotted Elk*, 548 F.3d 641, 658 (8th Cir. 2008).

The district court gave the following curative instruction:

Keep in mind that you must give separate consideration to the evidence about each individual defendant. Each defendant is entitled to be treated separately and you must return a separate verdict for each defendant.

Also keep in mind that you must consider separately each crime charged against each individual defendant, and you must return a separate verdict for each of those crimes charged.

R. Doc. 531-1, at 124. May "has given us no reason to conclude that this was not an adequate safeguard in his case or that the district court abused its discretion in refusing to sever." *Spotted Elk*, 548 F.3d at 658. Thus, denial of May's severance motion was not an abuse of discretion.

## 2. *Sentencing*

May's argument for procedural error and substantive unreasonableness are based on the district court's "holding that Mr. May's 'criminal history consists of violent acts and possession of firearms.'" May's Br. at 16 (quoting R. Doc. 522, at 17). As to procedural error, May asserts that the district court erred by mischaracterizing his criminal history given that most of his crimes were property crimes. He notes that although three of his offenses were for assault and battery, only one was arguably violent. He further argues that these crimes took place in his youth, between the ages of 17 and 21 years old.

As to substantive reasonableness, he contends that the district court gave insufficient weight to "his difficult upbringing, serious health issues (which required him to sit in a wheelchair during trial), and lack of any recent violent criminal conduct." May's Br. at 17.

### a. *Standard of Review*

"When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply a deferential abuse-of-discretion standard." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (internal quotation marks omitted). "We review a district court's sentence in two steps: first, we review for significant procedural error; and second, if there is no significant procedural error, we review for substantive reasonableness." *United States v. O'Connor*, 567 F.3d 395, 397 (8th Cir. 2009).

### b. *Procedural Error*

Procedural errors include failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen

sentence—including an explanation for any deviation from the Guidelines range.

*United States v. Godfrey*, 863 F.3d 1088, 1094–95 (8th Cir. 2017) (internal quotation marks omitted). "In reviewing the sentence for procedural errors, we review a district court's interpretation and application of the guidelines de novo and its factual findings for clear error." *Id.* at 1095 (internal quotation marks omitted). However, May failed to object to the characterization of his criminal history at sentencing, so we review for plain error. *United States v. Burnette*, 518 F.3d 942, 946 (8th Cir. 2008). In any event, whether we review de novo or for plain error does not change the result because May cannot show the district court erred.

The district court noted May's "criminal history consists of violent acts and possession of firearms," as one of the reasons for the sentence. R. Doc. 522, at 17. The court's finding was not clearly erroneous. As May concedes, his criminal history includes two convictions for assault and one for battery. He was also convicted of possession of a defaced firearm. May accumulated numerous violations for violent behavior while in custody as well. The district court's statement that May's "criminal history consists of violent acts and possession of firearms," did not mis-characterize his criminal history. Thus, the district court did not commit procedural error.

### c. *Substantive Reasonableness*

"In the absence of procedural error below, we should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Godfrey*, 863 F.3d at 1099 (quoting *Feemster*, 572 F.3d at 461). An abuse of discretion occurs when the district court "(1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper

or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *Id.* (quoting *Feemster*, 572 F.3d at 461).

May was sentenced to 360 months' imprisonment and does not challenge that his Guidelines range was 360 months to life. Accordingly, we afford his sentence a presumption of reasonableness. *See United States v. Goodrich*, 739 F.3d 1091, 1099 (8th Cir. 2014) (per curiam).

Moreover,

> regardless of some mitigating circumstances, a sentencing court has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence. Simply because the district court weighed relevant factors . . . more heavily than [May] would prefer does not mean the district court abused its discretion.

*United States v. Farmer*, 647 F.3d 1175, 1179 (8th Cir. 2011) (citation omitted). May has pointed to no reversible error in the district court's weighing of the § 3553(a) factors. We conclude that his sentence was not an abuse of discretion.

## B. *Richards*

Richards raises four arguments on appeal. First, he argues that the district court erred in denying his motion for recusal. Second, he argues that the district court erred in denying his motion to suppress wiretap recordings. Third, he argues that the district court erred in denying his motion to suppress video surveillance. Fourth, he argues that his conviction was not supported by substantial evidence.

## 1. *Motion for Recusal*

Richards notes that the judge who presided over the trial was also the judge who had issued the warrants that authorized the wiretap on his phone. According to

Richards, this "heavily involved the District Court Judge in preliminary conduct and activity by which the Court gained specific information and knowledge about Richards." Richards's Br. at 11. He asserts this familiarity with the case required the judge to recuse.

"We review a judge's refusal to recuse for an abuse of discretion." *United States v. Oaks*, 606 F.3d 530, 536 (8th Cir. 2010). In determining whether a judge is required to recuse himself, "the question is whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." *Id.* (internal quotation marks omitted); *see also* 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.").

Richards's argument is without merit. "A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." *Oaks*, 606 F.3d at 537 (internal quotation marks omitted).

Richards has failed to point to any facts establishing that the district judge's impartiality might reasonably be questioned. The district judge's issuance of some of the warrants in this case does not, of itself, require recusal. *See United States v. Jones*, 801 F.2d 304, 312–13 (8th Cir. 1986) (affirming denial of motion for recusal where defendant, who sought recusal of any judicial officer executing any wiretap orders or search warrants, failed to show any specific facts indicating personal bias). Richards provided no other basis to refute the presumption of impartiality. Therefore, we affirm the district court's denial of Richard's recusal motion.

## 2. *Motion to Suppress Wiretap Recordings*

In his opening brief, Richards argues that the wiretaps, which "intercepted calls by Richards and numerous individuals that he interacted with from day to day" from April 24, 2018, to May 23, 2018, were illegal and breached his Fourth Amendment right against unreasonable searches and seizures. Richards's Br. at 13. He argues that *Katz v. United States*, 389 U.S. 347 (1967), and *United States v. Jones*, 565 U.S. 400 (2012), established a reasonable expectation of privacy from this type of surveillance that the government violated. He does not, however, assert in his opening brief how the wiretap violated the law or breached his constitutional rights.

In his reply brief, Richards challenges, for the first time, the district court's conclusion that he lacked standing to challenge the wiretaps. He argues that he has standing because he was "named as a 'targeted' [person] in the wiretap application." Richards's Reply Br. at 10. He first asserts that he was not on any of the calls intercepted by the wiretap. This, however, contradicts the statement made in his opening brief that his calls were intercepted and that the wiretaps allowed the government to "listen and record certain conversations made particularly by Defendant Richards." Richards's Br. at 13. He then states that "should the Court consider Richards' argument, Richard would contend that even if he denies being the voice on the wiretaps, he still has standing to make such a challenge." Richards's Reply Br. at 9.

In any event, Richards waived his right to challenge standing when he failed to address this issue in his opening brief. *See Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived."). Nor does his reply brief give "some reason for failing to raise and brief the issue in his opening brief." *Id.* (internal quotation marks omitted)*.*

Any other challenges to the wiretap recordings are also waived because Richards has failed to meaningfully explain why his motion to suppress should have

been granted. *See United States v. Williams*, 39 F.4th 1034, 1045 n.3 (8th Cir. 2022) (citing *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 634 (8th Cir. 2007) ("[P]oints not meaningfully argued in an opening brief are waived.")). The district court denied Richards's motion on two independent grounds: lack of standing and probable cause. His standing argument is waived, and he does not challenge the finding of probable cause. Accordingly, we affirm denial of his motion to suppress the wiretap recordings.

### 3. *Motion to Suppress Video Surveillance*

Richards challenges the video recordings of his drug transaction with Ray Boyd. However, Richards again makes two distinct arguments in his opening and reply briefs. In his opening brief, he argues that the video surveillance violated his expectation of privacy because he did not consent to being recorded. In his reply brief, Richards challenges the admissibility of the video recordings as impermissible hearsay and a violation of his Sixth Amendment right to confront a witness because Boyd was unavailable at trial.[2]

To the extent he is challenging the admissibility of the videos, that claim is waived. "The Supreme Court has distinguished between a right that is inadvertently left unasserted and one that is intentionally relinquished or abandoned, noting that the latter constitutes a waiver that extinguishes a claim altogether." *United States v. Gutierrez*, 130 F.3d 330, 332 (8th Cir. 1997) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)). "[W]aived claims are unreviewable on appeal." *United States v. Wisecarver*, 598 F.3d 982, 988 (8th Cir. 2010) (internal quotation marks omitted).

Richards not only failed to object to the admission of the videos at trial, but after questioning from the district court, his lawyer expressly stated that Richards had

---

[2]We note that the second argument seems to assert an argument made in his opening brief as a challenge to his conviction, not his motion to suppress.

no objection to admitting both the videos and certain screenshots taken from the videos. R. Doc. 529, at 99, 101, 103, 110. Thus, this claim was not inadvertently left unasserted; it was intentionally abandoned. *See United States v. Robinson*, 617 F.3d 984, 989 (8th Cir. 2010) ("A defendant may waive his confrontation rights by failing to object to the offending evidence." (cleaned up)).

As to Richards's argument that the video recordings violated his expectation of privacy, "[i]t is well-established in Fourth Amendment jurisprudence that a person engaged in a conversation assumes the risk that another party to the conversation might choose to divulge or even record the conversation." *United States v. Corona-Chavez*, 328 F.3d 974, 981 (8th Cir. 2003) (citing *United States v. White*, 401 U.S. 745, 752–53 (1971)). In *Corona-Chavez*, the defendant lacked an expectation of privacy when an informant secretly videotaped him during a meeting in the informant's hotel room. *Id.* at 982.

Here, Richards invited Boyd, an informant, into his home and conducted a drug transaction with him. Boyd secretly recorded the transaction, and Richards sought to suppress the recordings. The district court denied his suppression motion, and we discern no abuse of its discretion in its decision to do so.

### 4. *Richards's Conviction*

Richards attacks his conviction with four arguments. First, he challenges Bradley's failed testimonial identification at trial. Second, he argues that the court's admission of Boyd's surreptitious recordings violated his confrontation rights. Third, he challenges the sufficiency of the evidence contained in the wiretap and video surveillance recordings that he challenged in his motions to suppress. Fourth, he challenges the credibility of all codefendants who testified against him. None of his arguments have merit.

## a. *Bradley's Testimony*

Richards relies on *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2559 (2018), to argue that "[t]he identi[fication] of Defendant Richards by Cedric Bradley was unreliable." Richards's Reply Br. at 12. To test the reliability of the government's identification procedures, we apply the two-part test adopted in *Manson v. Brathwaite*, 432 U.S. 98 (1977). *United States v. Murdock*, 928 F.2d 293, 297 (8th Cir. 1991). Normally, an identification challenge implicates a defendant's due process rights, to which we apply a de novo standard of review. *United States v. Davis*, 103 F.3d 660, 669 (8th Cir. 1996). However, because Richards failed to raise this issue below, we review for plain error. *United States v. Anderson*, 783 F.3d 727, 746 (8th Cir. 2015). To succeed, Richards must show, among other things, that Bradley's testimony prejudiced him, or that it "affect[ed] [his] substantial rights." *United States v. Shumpert*, 889 F.3d 488, 490 (8th Cir. 2018) (internal quotation marks omitted).

Richards can show no prejudice. Richards is correct that Bradley did not identify Richards in court. But Bradley's testimony was not the only evidence connecting Richards to the wiretap recordings involving Bradley. Agent Hubbard, as the case agent, authorized the wiretaps in this case. Agent Hubbard testified that Richards's phone was labeled Target Phone 2. He authenticated Government Exhibit 9 consisting of a disc containing calls recorded from Target Phone 2 between Richards and Bradley. Similarly, Bradley verified Government's Exhibit 9 as the disc containing the calls between him and Richards. Bradley also verified the specific calls played in court. And Hubbard successfully provided an in-court identification of Richards during his testimony. Thus, Bradley's testimony, aside from the attempted visual identification, was corroborated. Given sufficient other evidence, the government's misstep of asking a witness without his corrective lenses to make a visual identification did not sink its case.

Richards relies on *Sexton*, but it is unavailing. Unlike *Sexton*, this case deals only with in-court identification of Richards at trial, not at other stages of the

-16-

litigation. Agent Hubbard successfully identified Richards in court during his testimony about the wiretap recordings. Richards does not challenge Agent Hubbard's identification. Agent Hubbard identified him as "James Richards." This is the same "James Richards" who was the subject of Hubbard's investigation and was discussed throughout Hubbard's testimony, including his testimony on the wiretaps. Richards thus fails to show any impact on his substantial rights.

### b. *Remaining Arguments*

Richards's remaining arguments are meritless. He waived his challenge to the admissibility of the recordings made by Boyd. His motions to suppress the wiretap and video surveillance recordings are denied for the reasons stated previously. His challenges to "[t]he jury's credibility determinations are virtually unreviewable on appeal," *United States v. Wiest*, 596 F.3d 906, 911 (8th Cir. 2010), and he has provided inadequate justification for us to question such determinations in his case.

### III. *Conclusion*

Accordingly, we affirm.

_____