# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-2884

_____

United States of America

*Plaintiff - Appellee*

v.

Derek Michael Mims

*Defendant - Appellant*

_____

No. 23-3009

_____

United States of America

*Plaintiff - Appellee*

v.

David Poitier Belton, also known as Blood

*Defendant - Appellant*

_____

No. 23-3140

_____

United States of America

*Plaintiff - Appellee*

v.

Anton Tarrice Whitney, Jr.

*Defendant - Appellant*

_____

No. 23-3218

_____

United States of America

*Plaintiff - Appellee*

v.

Elmer Mims, Unc

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: September 25, 2024
Filed: December 9, 2024

_____

Before SMITH, ERICKSON, and STRAS, Circuit Judges.

_____

ERICKSON, Circuit Judge.

A grand jury indicted Derek Mims ("Derek"), Elmer Mims ("Elmer"), David Belton, and Anton Whitney (collectively "the Members") with conspiracy to distribute pure methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) & 846. The indictment also charged Whitney with possession of a firearm by a drug

user in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2), and it charged Belton with possession of a firearm by a felon and drug user in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(a)(2). Derek, Belton, and Whitney entered conditional guilty pleas, and a jury found Elmer guilty. The Members appeal the district court's[1] denial of the motion to suppress evidence from wiretaps and the denial of the motion to recuse. Belton also appeals the denial of the motion to suppress evidence from a vehicle search. Elmer appeals the sufficiency of the evidence for the jury verdict and the length of his sentence. Derek and Whitney also challenge the length of their sentences.

## I.    BACKGROUND

Law enforcement's investigation of this drug trafficking operation included the use of confidential sources, controlled buys, and physical surveillance of the suspects. To obtain additional evidence not available through conventional investigatory methods, and to identify other potential members of the conspiracy, Bryan Furman, a Task Force Officer assigned to the Drug Enforcement Administration ("DEA"), applied for a series of wiretap warrants between February 2021 and February 2022. Judge Williams authorized the wiretaps.

When the Members moved to suppress the evidence obtained from the wiretaps, Judge Williams referred the motion to the magistrate judge for a Report and Recommendation. Judge Williams adopted the magistrate judge's R&R. Because Judge Williams authorized the wiretaps, the Members sought his recusal from determining the motion to suppress. The district court denied the motion to recuse and the motion to suppress.

As part of the investigation, law enforcement seized approximately thirty pounds of methamphetamine from a Volkswagen Passat transported on a car carrier.

---

[1]The Honorable C.J. Williams, United States District Judge, now Chief Judge, for the Northern District of Iowa.

Due to the suspicious circumstances of the transportation arrangement, the car hauler contacted law enforcement. Upon a cursory exterior inspection of the vehicle, law enforcement observed after-market modifications consistent with drug smuggling. The district court denied Belton's motion to suppress this evidence.

Derek, Elmer, and Whitney object to their sentences on various grounds. Derek contends the 4-level enhancement for an aggravating role in the offense under U.S.S.G. § 3B1.1(a) was improper. Elmer asserts the district court failed to give proper weight to his proffered mitigating factors. Whitney objects to the drug quantity attributed to him and claims he is entitled to a mitigating role adjustment under U.S.S.G. § 3B1.2.

## II.    DISCUSSION

### A.    Motions to Suppress

The denial of a motion to suppress is reviewed *de novo*, and the underlying factual findings are reviewed for clear error. United States v. Thompson, 210 F.3d 855, 858 (8th Cir. 2000).

#### 1.    *Wiretaps*

To obtain an order for the interception of wire communications, law enforcement must establish the following:

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

-4-

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d) except as provided in subsection (11), there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

18 U.S.C. § 2518(3).

Officer Furman completed the affidavits for the seven wiretaps challenged in this appeal. At the times of the execution of the wiretaps, Officer Furman had worked as a police officer for over twenty-seven years and as a Task Force Officer assigned to the DEA for over twelve years. He had participated in more than 100 controlled substance investigations and received training on multiple drug trafficking topics.

All Members assert that the DEA failed to establish the necessity requirement under § 2518(3)(c). The Members also assert that the DEA failed to establish one or more of the three types of probable cause required by § 2518(3) for one or more of the wiretaps.

a.    Necessity

The necessity requirement is satisfied when law enforcement establish that "conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each co-conspirator . . . ." United States v. Turner, 781 F.3d 374, 382 (8th Cir. 2015) (quoting United States v. West, 589 F.3d 936, 939 (8th Cir. 2009)). Law enforcement does not have to "exhaust every available investigative technique." United States v. Merrett, 8 F.4th 743, 749 (8th

Cir. 2021) (quoting United States v. Terrell, 912 F.3d 1125, 1129 (8th Cir. 2019)). A wiretap does not have to be the "last resort." Id. (citations omitted).

Boilerplate assertions of necessity are not fatal to the affidavit. United States v. Milton, 153 F.3d 891, 895 (8th Cir. 1998). Drug conspiracies contain common elements that render some conventional investigatory techniques ineffective in each case. Id.

Our review of the affidavits shows that each stated that law enforcement had used confidential sources, conducted controlled purchases, engaged in physical surveillance, executed search warrants, conducted interviews, performed or attempted to perform trash searches, used other electronic surveillance, employed mail cover requests, and attempted financial investigation. The affidavits also explained the effectiveness and limitations of these investigative techniques and why undercover agents and grand jury subpoenas were not used. There is no clear error in the district court's factual findings on necessity.

The arguments from Derek, Belton, and Whitney on necessity are that law enforcement should have tried more alternative investigative techniques prior to seeking the wiretaps and that some of the allegations are boilerplate. Elmer asserts that because the officers obtained some evidence using the investigative techniques described in the affidavits, law enforcement should have continued with those.

The affidavits describe many investigative techniques that law enforcement used prior to seeking the wiretaps and explained why other techniques would likely be ineffective for this conspiracy. Determining the identity of all members of a drug conspiracy may only be accomplished in many cases through wiretaps, but this common characteristic is not fatal to the affidavits. Milton, 153 F.3d at 895. Contrary to the Members' arguments, law enforcement is not required to exhaust every other possible investigative technique prior to seeking a wiretap warrant. Merrett, 8 F.4th at 749. The affidavits meet the necessity requirement of § 2518(3)(c). Id.

b.     Probable Cause

The probable cause requirement in § 2518(3) is the same as the Fourth Amendment's probable cause requirement.  Id. at 750.  An appellate court is limited to determining whether the judge had a "substantial basis" for finding probable cause.  Milton, 153 F.3d at 894 (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)).  The probable cause determination is based only on the facts contained in the affidavit.  Id.  Probable cause exists if the totality of the circumstances supports a fair probability that evidence of a crime will be found in the object to be searched.  United States v. Keele, 589 F.3d 940, 943 (8th Cir. 2009).

Derek challenges the February 22, 2021 wiretap because it intercepted four of his communications regarding drug trafficking.  The targets of this wiretap were three individuals who are not parties to this appeal.  The evidence presented in the affidavit included a confidential informant who had purchased heroin from two of the targets and an admission to police from the third target that he sold heroin.  The confidential source identified one of the phones in the affidavit, and law enforcement identified the other two phones through prior intercepted communications and inmate phone calls.  The affidavit contained sufficient facts to support probable cause.

Derek also challenges the March 25, 2021 affidavit as lacking probable cause.  However, Derek concedes, and the government acknowledges, that law enforcement intercepted none of his communications from this wiretap, so there is nothing to suppress.

In the May 21, 2021 affidavit, Officer Furman described the arrest of a co-conspirator in possession of ten pounds of methamphetamine.  This co-conspirator told law enforcement that Belton gave him the methamphetamine and that he had purchased methamphetamine from Belton multiple times in 2020.  Law enforcement intercepted a communication between other co-conspirators that involved discussion of Belton's role within the drug trafficking operation.  Law enforcement also

interviewed Robert Bates who admitted to purchasing pound quantities of methamphetamine from Belton once or twice a week for approximately eight months. Using toll records, law enforcement confirmed communications between a phone used by Belton and Bates and the arrested co-conspirator.

Regarding the probable cause for Derek's phone, Officer Furman discussed intercepting four communications between Derek and a co-conspirator from the February 22, 2021 wiretap. The communications regarded purchasing narcotics and then selling the drugs in Cedar Rapids, Iowa.

Belton asserts that the evidence in the affidavit demonstrated he engaged in drug trafficking on Target Telephone 6 ("TT6"), but there was no evidence he also engaged in drug trafficking on Target Telephone 7 ("TT7"). This is incorrect. The affidavit describes how TT7 had the same International Mobile Equipment Identity ("IMEI") number as TT6. This means that Belton still had the same cell phone; he had only changed the phone number for it. Law enforcement further confirmed it was the same phone by comparing phone logs of TT6 and TT7 and finding fifty common callers between the two phone numbers. From a previous wiretap, Officer Furman also explained that Belton used TT7 to call a co-conspirator to arrange payment for a drug debt. Probable cause existed that additional drug trafficking calls may occur on TT7.

Derek asserts that his four communications were innocuous and cannot be attributed to discussions of drug trafficking. For example, in one conversation, Derek asked a co-conspirator "you headin' out with us?" and the co-conspirator responded that if he was allowed, he would go with them and reassured Derek that "[m]y money ready, my money all packaged up, I'm ready bro . . . ." By this point, the DEA had already established the co-conspirator as a drug dealer through confidential sources, controlled buys, and interviews with other members of the drug trafficking organization. Based on his experience and prior work on this case, Officer Furman interpreted the allegedly innocuous conversations as discussions regarding the purchase and sale of drugs.

When determining probable cause, the observations of the law enforcement officer must be viewed as a whole. United States v. Wallraff, 705 F.2d 980, 988 (8th Cir. 1983) (citations omitted). An officer's training and experience should be taken into account when determining probable cause. Id.; see also Keele, 589 F.3d at 944 (accepting officer's opinion that specific innocuous items were used in drug trafficking based on his experience). Conduct that appears innocuous to the lay person may be significant to an officer with training and experience in "the practices of drug smugglers and the methods used to avoid detection." Wallraff, 705 F.2d at 988.

In this case, Derek's conversations were with a drug dealer. Similarly, the communication in this affidavit that Belton claims was innocuous was with a drug dealer. Given Officer Furman's training and experience, his prior experience specifically with this case, and the context of the communications, his opinion that these conversations were about drug trafficking is given weight in determining probable cause. Id. Probable cause existed to support the wiretap of Derek's phone.

Turning to the January 13, 2022 affidavit, Whitney asserts his allegedly innocuous conversations with co-conspirators cannot support a probable cause determination, and there was no evidence he was using Target Telephone 14 ("TT14") to conduct drug trafficking business. In one text exchange, Whitney told Derek that "He gone wait to get more tomorrow still waitin on more bread but got tha rest he owes now tho." Whitney argues that Officer Furman's opinion that "bread" was coded language for drug proceeds is unsupported. Again, viewing the evidence as a whole through the lens of Officer Furman's training and experience, this interpretation supports probable cause. Wallraff, 705 F.2d at 988.

Furthermore, there were other Whitney intercepted communications from previous wiretaps that established his role in the organization as a collector of drug proceeds who delivered the proceeds to Derek or Belton. There were also multiple intercepted communications between Whitney and known purchasers of methamphetamine from the organization.

Whitney's arguments regarding TT14 are coextensive with his arguments about probable cause that he engaged in drug trafficking. Based on the totality of the circumstances, there was probable cause that Whitney participated in drug trafficking and communications regarding collecting drug proceeds took place on TT14. Therefore, the January 13 affidavit established probable cause against Whitney.

The Members' remaining objections rely on their claim that the earlier affidavits lacked probable cause, so any evidence obtained from those wiretaps is tainted and cannot be used to support later wiretaps. Because probable cause supported the previous affidavits, there is no taint requiring exclusion of evidence from the later wiretaps.

###### 2.    *Vehicle Search*

Belton next contends that the search of the Passat violated his Fourth Amendment rights. The Fourth Amendment requirement for a warrant prior to a search is subject to several exceptions including the automobile exception. California v. Carney, 471 U.S. 386, 390 (1985). The automobile exception is based on the ready mobility of the vehicle and the lower expectation of privacy in a vehicle compared to in a home. Id. at 391 (quoting South Dakota v. Opperman, 428 U.S. 364, 367 (1976)). However, the automobile exception still applies when the vehicle is not immediately mobile. Id. For instance, we have applied the exception to a car with a flat tire in an apartment parking lot. United States v. Short, 2 F.4th 1076, 1079 (8th Cir. 2021).

Under the automobile exception, law enforcement must have probable cause for the search. United States v. Soderman, 983 F.3d 369, 375 (8th Cir. 2020). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe that there is a fair probability that contraband or evidence of a crime would be found in a particular place." United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000) (per curiam). Probable cause may be supported by an

officer's experience such as concluding from the presence of aftermarket wires in a vehicle that it may have been modified to conceal drugs. Soderman, 983 F.3d at 375.

In this case, Trae Finn hired a car hauler to transport the Passat from Phoenix to Cedar Rapids. The driver of the car carrier became suspicious when the shipper paid him $1,000 cash up front when most shippers pay upon delivery. The driver also found it suspicious when the shipper said the car was a graduation present for his daughter-in-law, but graduation was months away. Due to his unwitting prior involvement in a similar situation hauling a car found to contain methamphetamine, the driver contacted Homeland Security Investigations ("HSI") and relayed his suspicions.

Lieutenant Arcenio Chavez, a Task Force Officer assigned to HSI, responded to the call. Among his responsibilities, he trained officers on how smugglers hide contraband in vehicles. The driver showed Lt. Chavez the bill of lading. Lt. Chavez saw that the bill of lading included Finn's phone number as the shipper, but the phone number for the consignee, Eric (no last name), was missing, which was unusual. In addition to the shipper paying up front, Lt. Chavez also found the payment of $1,000 suspicious because it was higher than the average price for shipping a vehicle that distance.

Lt. Chavez first examined the underside of the Passat while it was on the carrier and observed that some of the screws and bolts had been removed and the paneling had been pulled back and damaged. Belton concedes that the officer's examination of the undercarriage was permissible. Based on Lt. Chavez's experience, these aftermarket modifications were consistent with alterations to conceal contraband. Next, he used the key FOB to attempt to open the trunk, but it did not work. Based on his experience, disabling key FOB access to the trunk was also consistent with concealing contraband.

-11-

Based on the totality of the circumstances, a reasonable person could conclude there was a fair probability the vehicle contained contraband. The vehicle was inherently mobile. See Short, 2 F.4th at 1079 (applying the automobile exception to a vehicle with a flat tire). Therefore, the automobile exception applied to this search. Soderman, 983 F.3d at 375.

### B.      Motion to Recuse

Derek and Whitney assert that Judge Williams should have recused himself from deciding the wiretap motion to suppress under 28 U.S.C. § 455(a), which requires disqualification when the judge's "impartiality might reasonably be questioned." The denial of a motion to recuse is subject to the abuse of discretion standard of review. United States v. May, 70 F.4th 1064, 1073 (8th Cir. 2023) (quoting United States v. Oaks, 606 F.3d 530, 536 (8th Cir. 2010)). A party seeking a judge's recusal bears the substantial burden of proving the judge's lack of impartiality. May, 70 F.4th at 1073 (quoting Oaks, 606 F.3d at 537).

The only evidence presented in support of recusal is the authorization of wiretaps by Judge Williams. A district judge's authorization of wiretap warrants does not require recusal from a subsequent motion to suppress evidence obtained from those wiretaps. May, 70 F.4th at 1073-74; United States v. Jones, 801 F.2d 304, 312 (8th Cir. 1986). The district court did not abuse its discretion in denying the motion to recuse.

### C.      Sufficiency of the Evidence for the Jury Verdict

A challenge to the sufficiency of the evidence to support a jury's verdict is reviewed *de novo*. United States v. Coleman, 584 F.3d 1121, 1125 (8th Cir. 2009). The review is limited to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Musacchio v. United States, 577 U.S. 237, 243 (2016) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

The jury convicted Elmer of conspiracy to distribute methamphetamine and found the quantity was 500 grams or more of methamphetamine in mixture form and 50 grams or more of pure methamphetamine. Elmer claims that he is a marijuana distributor and that the government presented no evidence that he bought or sold methamphetamine. Elmer contends that the recorded conversations the jury heard about drug trafficking between himself and co-conspirators could be discussions about marijuana instead of methamphetamine.

Elmer's arguments ignore the significance of the timing of these communications and the identity of the other parties to the conversations. For example, Elmer talked to Belton and Derek, who distributed methamphetamine. The government presented testimony from co-conspirators about when shipments of methamphetamine arrived in Cedar Rapids and Elmer's conversations during that same time about purchasing drugs. A recorded conversation between Benton and Derek described selling part of a methamphetamine shipment to Elmer. After another shipment of methamphetamine arrived in Cedar Rapids, following conversations between Elmer and Derek about purchasing drugs, police observed Derek arrive at Elmer's residence with a bag and then Derek leaving without the bag.

The jury also heard testimony that Belton regularly brought methamphetamine from California to Cedar Rapids and that Derek only distributed methamphetamine. The testimony established multiple conversations between Elmer and Derek or Belton regarding purchasing drugs at the same time shipments of methamphetamine arrived. Based on the evidence presented, any rational trier of fact could have found beyond a reasonable doubt that Elmer participated in a conspiracy to distribute methamphetamine.

D.    Sentencing

The deferential abuse of discretion standard applies to a review of the substantive reasonableness of a sentence. United States v. Manning, 738 F.3d 937,

947 (8th Cir. 2014) (quoting United States v. Beasley, 688 F.3d 523, 535 (8th Cir. 2012)). Abuse of discretion includes: 1) ignoring a relevant factor that should have received significant weight, 2) giving too much weight to an irrelevant or improper factor, or 3) committing a clear error of judgment even when weighing only appropriate factors. Id.

### 1.    *Derek Mims*

Derek objects to the district court's application of a 4-level role enhancement. The district court found that Derek served as an organizer or leader of the conspiracy as defined by U.S.S.G. § 3B1.1(a). Derek also asserts that the court should have varied downward because he was a compliant inmate and had a good work ethic and employment history.

The district court's factual findings supporting a role enhancement are reviewed for clear error. United States v. Vasquez-Rubio, 296 F.3d 726, 729 (8th Cir. 2002). The application of the Guidelines to the facts is reviewed *de novo*. Id. The terms "organizer" and "leader" under the Guidelines are interpreted broadly. United States v. Bahena, 223 F.3d 797, 804 (8th Cir. 2000) (citations omitted).

The district court found that Derek recruited couriers to transport methamphetamine from California to Cedar Rapids. Derek directed Whitney to collect money from a distributor. Derek also drove to California with couriers but then would fly back instead of returning in the car once it contained methamphetamine. The district court found the ability to fly back to avoid risk indicated Derek held a higher-level position in the organization. The court also found that Derek shared equally in the profits from the shipments. Most of these facts were in the Presentence Investigation Report and not objected to by Derek. In describing the scope of the conspiracy, the court observed that it involved fifty-eight times the drug quantity necessary to end up at the highest base offense level possible under the Guidelines.

There is no clear error in the district court's factual findings regarding the role enhancement. Given Derek's authority to direct others on the critical part of the operation—delivering large shipments of methamphetamine to Cedar Rapids—and his sharing equally in the proceeds, the court's application of the organizer or leader enhancement is appropriate.

With the four-level role enhancement, the Guidelines range was 360 months to Life, and the court sentenced Derek to 360 months. The district court imposed a within-Guidelines sentence and considered but rejected the alleged mitigating factors proffered by Derek. The district court neither abused its wide sentencing discretion nor is the sentence substantively unreasonable. Merrett, 8 F.4th at 752.

### 2. *Anton Whitney*

Whitney asserts that the district court's finding on the quantity of drugs attributable to him was clearly erroneous. Whitney also asserts that he was entitled to a mitigating role adjustment under U.S.S.G. § 3B1.2.

For sentencing purposes, the government must prove drug quantity by a preponderance of the evidence. United States v. McArthur, 11 F.4th 655, 659 (8th Cir. 2021) (per curiam) (citations omitted). The drug quantity finding requires reversal only when "the entire record definitely and firmly illustrates that the lower court made a mistake." Id. (citations omitted). Drug quantities that the defendant did not directly participate in may be attributed to him when the transaction was "known or reasonably foreseeable to the defendant" within the scope of the conspiracy. Id. (quoting United States v. Lewis, 976 F.3d 787, 797 (8th Cir. 2020)).

At the sentencing hearing, the government presented intercepted communications with Whitney and the testimony of Officer Furman. During the calls, Whitney talked about a thirty-pound shipment of methamphetamine and a sixty-pound shipment of methamphetamine. Based on this evidence, the district court found that Whitney knew about at least ninety pounds of methamphetamine

shipped as part of the conspiracy and observed that the sixty-pound shipment alone was more than enough to establish the base offense level of 38. The district court did not make a mistake in determining the drug quantity attributable to Whitney.

The refusal to grant a role reduction is reviewed for clear error. United States v. Hernandez Lopez, 24 F.4th 1205, 1208 (8th Cir. 2022). The defendant bears the burden of proof. Id. Role reduction is inapplicable "if the defendant was deeply involved in the offense." Id. at 1208-09 (citations omitted).

Based on a stipulation in the plea agreement and the contents of intercepted communications, the district court found that Whitney knew about the quantity and timing of methamphetamine shipments from California to Cedar Rapids, that he collected money for drug sales and travelled on at least one occasion to California to deliver money for a shipment, and that he stored money and drugs for the organization. The court found that Whitney had a close relationship with Belton and Derek, who were leaders of the organization, and they trusted him enough to give him details about the operation and to collect money for drug sales. The court did not clearly err in denying the role reduction. Id. at 1209.

### 3. *Elmer Mims*

The Guidelines range for Elmer was 235 to 293 months. The judge varied downward under U.S.S.G. § 4C1.1 because Elmer had zero criminal history points, which resulted in a new range of 188 to 235 months. The judge sentenced Elmer to 235 months. Elmer contends his sentence should have been at the low end of the Guidelines range due to his advanced age and the possibility that he has cancer.

A within-Guidelines sentence carries a presumption of reasonableness. Manning, 738 F.3d at 947. At sentencing, the court acknowledged that Elmer was sixty-nine years old. On the issue of potential cancer, the court noted that there was no evidence in the record. However, the court weighed Elmer's advanced age against the fact that he had significant criminal history; the history was only too old

to be considered for points under the criminal history category for purposes of the Guidelines.  The court noted that Elmer had been to prison twice previously for drug trafficking.  The court also considered as an aggravating factor the large quantity of methamphetamine trafficked in this conspiracy.  The court did not abuse its discretion in sentencing Elmer.  Id.

## III.  CONCLUSION

The judgments of the district court are affirmed.

_____